ESTATE OF HURST v. MOOREHEAD I, LLC

[228 N.C. App. 571 (2013)]

ESTATE OF TIMOTHY ALAN HURST, by and through CHRISTIAN P. CHERRY,
as Collector; JEFFERY WAYNE HENLEY a/k/a JEFFREY WAYNE HENLEY; and
BEVERLY HENLEY, Plaintiffs

v.

MOOREHEAD I, LLC; CRAMER MOUNTAIN DEVELOPMENT CO., LLC a/k/a CRAMER
MOUNTAIN DEVELOPMENT LLC; PARK WEST PREMIER PROPERTIES, LLC; PARK
WEST INVESTMENTS, INC.; PARK WEST-STONE, LLC; PARK WEST DEVELOPMENT
COMPANY, INC.; COBBLESTONE BUILDERS, LLC; FRANK DESIMONE a/k/a FRANK
DESIMONE; BRUCE B. BLACKMON, JR. a/k/a BRUCE BLACKMON a/k/a BRUCE B.
BLACKMON; GREGORY A. MASCARO a/k/a GREG MASCARO, Defendants

No. COA12-1285

Filed 6 August 2013

1. **Corporations—limited liability company—breach of contract—alter ego liability—piercing corporate veil**

The trial court did not err by imposing alter ego liability against defendant Blackmon individually for breach of contract damages. Blackmon's arguments that the trial court's judgment improperly concluded and decreed that he was personally liable for the breach of contract damages were without merit.

2. **Damages and Remedies—nominal damages—unfair and deceptive trade practices—fraud—punitive damages**

The jury's findings and award of nominal damages were sufficient to support the trial court's judgment against both defendants Blackmon and Moorehead I for unfair and deceptive trade practices. The issues of fraud and punitive damages were separate and distinct claims from the issue of unfair and deceptive trade practices.

3. **Judgments—scope of jury verdict—not improperly expanded**

The trial court's judgment did not improperly expand the scope of the jury's verdict by holding defendant Blackmon personally liable for damages awarded against defendant Moorehead I, piercing the corporate veil, and decreeing that Blackmon and his other entities engaged in unfair and deceptive trade practices.

4. **Unfair Trade Practices—individual liability—no fraud or punitive damages—jury's findings not inconsistent**

The jury's finding that defendant Blackmon was individually liable for unfair and deceptive trade practices was not inconsistent with the jury's finding of no fraud and awarding of no punitive damages against Blackmon individually.

Appeal by defendants[1] from judgment entered 23 May 2011 and order entered 11 October 2011 by Judge Joseph N. Crosswhite in Cabarrus County Superior Court. Heard in the Court of Appeals 27 March 2013.

*Mills Law PA, by William L. Mills, III, for Estate of Timothy Alan Hurst plaintiff appellee.*

*Law Offices of Dale S. Morrison, by Dale S. Morrison, for Jeffery Wayne Henley and Beverly Henley, plaintiff appellees.*

*Ruff, Bond, Cobb, Wade & Bethune, LLP, by Ronald L. Gibson, for Moorehead I, LLC; Park West Premier Properties, LLC; Park West Investments, Inc.; Park West Development Company; and Bruce B. Blackmon, Jr. a/k/a Bruce Blackmon a/k/a Bruce B. Blackmon, defendant appellants.*

McCULLOUGH, Judge.

Moorehead I, LLC; Park West Premier Properties, LLC; Park West Investments, Inc.; Park West Development Company; and Bruce B. Blackmon, Jr. a/k/a Bruce Blackmon a/k/a Bruce B. Blackmon ("Blackmon," collectively "defendants") appeal from a judgment entered by the trial court after trial by jury. On appeal, defendants contend that (1) the jury's factual findings are inconsistent, (2) the trial court's judgment improperly expands the jury's verdict, and (3) the trial court's conclusions of law and judgment decrees are not supported by the jury's factual findings. After careful review, we affirm the trial court's judgment.

## I. Background

The present case arises from a mixed-use real estate development project known as the Epic Project consisting of approximately 1271 acres assembled from various property owners in Cabarrus and Mecklenburg Counties. Timothy Alan Hurst ("Hurst") owned approximately 72.229 acres in Cabarrus County near the proposed project, and Jeffery Wayne Henley and his wife, Beverly Henley (the "Henleys"), owned approximately 3.476 acres adjoining Hurst's property (collectively, the "Hurst/

---

1. On 24 January 2013, this Court dismissed the appeal of defendants Cramer Mountain Development Co., LLC a/k/a Cramer Mountain Development, LLC; Park West-Stone, LLC; Cobblestone Builders, LLC; and Frank Desimone a/k/a Frank Desimone for failure to file a brief in this appeal. Defendant Gregory A. Mascaro a/k/a Greg Mascaro did not appear during the trial of the present case and did not appeal from the trial court's judgment. [R p 278].

Henley tract"). The Hurst/Henley tract was part of the approximately 1271 acres contemplated for the Epic Project.

On 28 June 2006, Hurst and the Henleys (collectively, "plaintiffs") entered into a Purchase and Sale Agreement (the "Purchase Agreement") to sell the Hurst/Henley tract to Cramer Mountain Development, LLC ("Cramer") for $4.7 million. Cramer is an entity owned by defendant Frank Desimone ("Desimone"). Pursuant to the terms of the Purchase Agreement, the closing of the purchase transaction was to take place on the earlier of the thirtieth day following the issuance of development permits to Cramer or 28 June 2007 – twelve months from the date of the Purchase Agreement. However, the Purchase Agreement provided that Cramer could accelerate the closing date upon ten days written notice.

On 12 March 2007, the Purchase Agreement was assigned from Cramer to Moorehead I, LLC ("Moorehead I"). The operating agreement of Moorehead I provided that the powers of the company were to be exercised by Blackmon as the sole member of the company. Moorehead I was incorporated on 2 March 2007.

Also on 12 March 2007, Desimone; defendant Gregory A. Mascaro ("Mascaro"), a licensed real estate broker and friend of the Henleys; and Leslie Danielle Harrison ("Harrison"), also a licensed real estate broker and notary public, met with plaintiffs at the Henleys' barn near their residence. During this meeting, Desimone, Mascaro, and Harrison procured signatures from plaintiffs on multiple documents, including a North Carolina Special Warranty Deed listing Hurst as grantor and Moorehead I as grantee and a North Carolina Special Warranty Deed listing the Henleys as grantor and Moorehead I as grantee. George Sistrunk ("Sistrunk"), the closing attorney for Moorehead I, prepared these documents. At this time, plaintiffs received payment in the amount of $200,000.00.

On the following day, 13 March 2007, Sistrunk closed on the Hurst/ Henley tract for Moorehead I. Moorehead I executed a promissory note secured by a second priority deed of trust payable to plaintiffs for the balance of the purchase price, $4.5 million. The special warranty deeds signed by plaintiffs at the 12 March 2007 meeting were recorded in the office of the Cabarrus County Register of Deeds.

On the same date, Moorehead I obtained a $3.4 million loan from F&M Bank secured by a first priority deed of trust against the Hurst/ Henley tract. This deed of trust was executed by Blackmon as Member Manager of Moorehead I and was also recorded in the Cabarrus County

Register of Deeds on 13 March 2007. Moorehead I eventually defaulted on its obligations to F&M Bank and to plaintiffs.

On 29 July 2008, plaintiffs filed a verified complaint alleging claims for breach of contract, fraud, unfair and deceptive trade practices, and punitive damages. In their complaint, plaintiffs alleged that Desimone, Mascaro, and Harrison made representations to plaintiffs at the 12 March 2007 meeting that the documents being signed were to facilitate the payment of a $200,000.00 advance. Plaintiffs alleged that Desimone, Mascaro, and Harrison made further representations to plaintiffs that delivery of the advance did not constitute a closing and that no closing of the purchase transaction was occurring at that time. Plaintiffs alleged that they were never provided with copies of the documents signed, despite making repeated demands for such documents. Plaintiffs alleged that following Hurst's death on 17 May 2007, plaintiffs learned that a closing had occurred on 13 March 2007, despite the representations that had been made. Plaintiffs further alleged that among the documents received by Hurst's estate following his death was the promissory note in the amount of $4.5 million executed by Blackmon on behalf of Moorehead I, as well as other documents that plaintiffs alleged had been altered since their signing on 12 March 2007. Plaintiffs alleged that they were defrauded into closing on the purchase transaction under terms different than those agreed to in the Purchase Agreement by the representations made at the 12 March 2007 meeting with Desimone, Mascaro, and Harrison on behalf of Blackmon and Moorehead I. Plaintiffs further alleged that Moorehead I was in breach of the $4.5 million promissory note. Plaintiffs alleged that Desimone, Mascaro, Harrison, and Blackmon exercised complete domination over the various entities involved in the transaction, including Cramer and Moorehead I, justifying a disregard of the corporate form.

A trial was held beginning 24 January 2011. On 23 February 2011, the jury returned a verdict containing multiple findings of fact addressing twelve issues. Based on the factual findings of the jury verdict, on 23 May 2011, the trial court entered judgment concluding, *inter alia*, that Blackmon is the alter ego of Moorehead I and awarding, *inter alia*, the amount of $4.9 million to plaintiffs from Moorehead I and Blackmon, jointly and severally, for breach of contract, and the amount of $1.00 to plaintiffs from Moorehead I, Blackmon, and other defendants, jointly and severally, for unfair and deceptive trade practices.

On 2 June 2011, Blackmon filed a motion for judgment notwithstanding the verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure. The trial court entered an order denying Blackmon's

motion on 11 October 2011. Blackmon then entered written notice of appeal from the trial court's judgment and order on 9 November 2011.[2]

## II. Standard of Review

Blackmon has raised no issues on appeal concerning the sufficiency of the evidence to support the jury's factual findings contained in the verdict, nor has Blackmon raised an issue on appeal addressing the trial court's denial of his motion for judgment notwithstanding the verdict. Rather, all of the arguments presented by Blackmon in this appeal address only the trial court's conclusions of law and resulting judgment decrees based upon the jury verdict. Therefore, we review each of Blackmon's arguments under a *de novo* standard of review. *See Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 101, 655 S.E.2d 362, 369 (2008).

## III. Blackmon's Personal Liability for Breach of Contract; Piercing the Corporate Veil

[1] In his first argument on appeal, Blackmon contends that the trial court's decree awarding damages to plaintiffs for breach of contract against him individually is contrary to the jury's verdict and established law on the liability of corporations and limited liability companies. Blackmon contends that because the jury found no fraud nor awarded punitive damages against him individually, the trial court lacked the requisite findings of fact to hold him individually liable for Moorehead I's breach of the promissory note.

Further, in his fourth argument on appeal, Blackmon contends that the trial court's decree concluding that he is the alter ego of Moorehead I

---

2. Under Rule 3 of the North Carolina Rules of Appellate Procedure, timely filing of a motion for judgment notwithstanding the verdict pursuant to N.C. Gen. Stat. § 1A-1, Rule 50(b) tolls the period for filing and serving written notice of appeal in civil actions. N.C. R. App. P. 3(c)(3) (2013). "The full time for appeal commences to run and is to be computed from the entry of the order granting or denying the motion[] under Rule 50(b)[.]" *Middleton v. Middleton*, 98 N.C. App. 217, 220, 390 S.E.2d 453, 455 (1990).

Here, Blackmon filed a timely motion for judgment notwithstanding the verdict pursuant to Rule 50. However, this motion was filed by Blackmon alone, and not by the remaining defendants. Therefore, although the notice of appeal given on 9 November 2011 was on behalf of all defendants, the time for filing notice of appeal in this case was tolled during the pendency of the motion as to Blackmon only. The remaining defendants failed to file notice of appeal within 30 days from entry of the trial court's judgment. N.C. R. App. P. 3(c)(1). Because timely notice of appeal is jurisdictional, *see In re A.L.*, 166 N.C. App. 276, 277, 601 S.E.2d 538, 538 (2004), we dismiss the present appeal as to defendants Moorehead I, LLC; Park West Premier Properties, LLC; Park West Investments, Inc.; and Park West Development Company.

(in addition to certain other defendant entities), thereby imposing liability on him individually for breach of the promissory note, is similarly deficient. Blackmon contends that because the jury found no fraud nor awarded "actual damages" to plaintiffs, the trial court lacked the requisite findings of fact to satisfy two of the three required elements to pierce the corporate veil. Because both of these arguments address Blackmon's personal liability for the breach of contract damages awarded by the jury, we address these issues together.

Pursuant to the North Carolina Limited Liability Company Act:

> A person who is a member, manager, director, executive, or any combination thereof of a limited liability company is not liable for the obligations of a limited liability company solely by reason of being a member, manager, director, or executive and does not become so by participating, in whatever capacity, in the management or control of the business. *A member, manager, director, or executive may, however, become personally liable by reason of that person's own acts or conduct.*

N.C. Gen. Stat. § 57C-3-30(a) (2011) (emphasis added). "[A]s its name implies, limited liability of the entity's owners, often referred to as 'members,' is a crucial characteristic of the [limited liability company] form, giving members the same limited liability as corporate shareholders." *Hamby v. Profile Prods., L.L.C.*, 361 N.C. 630, 636, 652 S.E.2d 231, 235 (2007). "[M]ere participation in the business affairs of a limited liability company by a member is insufficient, standing alone . . . , to hold the member independently liable for harm caused by the [limited liability company]." *Spaulding v. Honeywell Int'l, Inc.*, 184 N.C. App. 317, 322, 646 S.E.2d 645, 649 (2007).

Nonetheless, a member of a limited liability company may be held individually liable for the company's obligations if the member engages in individual conduct that subjects him to liability. N.C. Gen. Stat. § 57C-3-30(a). In addition, a member of a limited liability company, like shareholders and directors of corporations, may be held individually liable for the company's obligations through the doctrine of piercing the corporate veil:

> Although a properly formed and maintained business entity, like a limited liability company or corporation, may provide a shield or 'veil' of protection from personal liability for an individual member or officer, this protection is not absolute. The two most common methods of

establishing personal liability in a business setting are 'piercing the corporate veil' and individual responsibility for torts, such as breach of fiduciary duty, negligence, fraud, and misrepresentation.

*White v. Collins Bldg., Inc.*, 209 N.C. App. 48, 52, 704 S.E.2d 307, 310 (2011) (citation omitted).

"In North Carolina, what has been commonly referred to as the 'instrumentality rule,' forms the basis for disregarding the corporate entity or 'piercing the corporate veil.' " *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985). "[T]he instrumentality rule allows for the corporate form to be disregarded if 'the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State[.]' " *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 440-41, 666 S.E.2d 107, 113-14 (2008) (second alteration in original) (quoting *Henderson v. Sec. Mortgage & Fin. Co.*, 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968)). "In that event, . . . 'the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person.' " *Id.* at 441, 666 S.E.2d at 114 (emphasis omitted) (quoting *Henderson*, 273 N.C. at 260, 160 S.E.2d at 44); *see also Statesville Stained Glass v. T.E. Lane Construction & Supply*, 110 N.C. App. 592, 596, 430 S.E.2d 437, 440 (1993) ("When a 'corporation is so operated that it is a mere instrumentality or alter ego of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person, it being immaterial whether the sole or dominant shareholder is an individual or another corporation.' " (quoting *Henderson*, 273 N.C. at 260, 160 S.E.2d at 44)).

To support an attack on a separate corporate entity under the instrumentality rule, a party must satisfy three elements:

"(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a

statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of."

*Glenn*, 313 N.C. at 455, 329 S.E.2d at 330 (quoting *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 9, 149 S.E.2d 570, 576 (1966)); *see also Cooper*, 362 N.C. at 441, 666 S.E.2d at 114. Factors that have been expressly or impliedly considered by our Courts in piercing the corporate veil include:

1. Inadequate capitalization ("thin incorporation"). . . .

2. Non-compliance with corporate formalities.

3. Complete domination and control of the corporation so that it has no independent identity.

4. Excessive fragmentation of a single enterprise into separate corporations.

*Glenn*, 313 N.C. at 455, 329 S.E.2d at 330-31 (citations omitted). In addition to these primary four factors, numerous other factors may be considered in evaluating liability under the instrumentality rule, including "non-payment of dividends, insolvency of the debtor corporation, siphoning of funds by the dominant shareholder, nonfunctioning of other officers or directors, [and] absence of corporate records." *Id.* at 458, 329 S.E.2d at 332.

> [T]he theory of liability under the instrumentality rule is an equitable doctrine. Its purpose is to place the burden of the loss upon the party who should be responsible. Focus is upon reality, not form, upon the operation of the corporation, and upon the defendant's relationship to that operation. It is not the presence or absence of any particular factor that is determinative. Rather, it is a combination of factors which, when taken together with an element of injustice or abuse of corporate privilege, suggest that the corporate entity attacked had "no separate mind, will or existence of its own" and was therefore the "mere instrumentality or tool" of the dominant corporation [or shareholder].

*Id.*

The trial court's instructions to the jury in the present case restated, in substance, the law respecting the instrumentality rule, as propounded

above, including all of the factors to be considered by the jury. The jury returned a verdict finding that, as defined under the instrumentality rule, Blackmon controlled Moorehead I (and certain other defendant entities) with respect to the breach of contract, fraud, and/or unfair and deceptive trade practices that damaged plaintiffs. Blackmon raises no argument on appeal concerning the propriety of the jury charge as given or the sufficiency of the evidence to support the jury's verdict. Indeed, plaintiffs presented evidence implicating multiple factors considered in evaluating liability under the instrumentality rule. Based on the jury's verdict, the trial court's judgment included the following decree:

> Defendant Bruce B. Blackmon, Jr. is the alter-ego of Defendants Moorehead I, LLC, . . . . All awards against these Defendant entities shall also be an award against Defendant Bruce B. Blackmon, Jr. in his individual capacity and all awards against Defendant Bruce B. Blackmon, Jr. shall be an award against these Defendant entities, jointly and severally.

Blackmon argues on appeal that because the jury failed to find him individually liable for fraud or to award actual damages for either fraud or unfair and deceptive trade practices against him individually, the jury's findings of fact fail to support the trial court's imposition of individual liability against him for the breach of contract damages awarded against Moorehead I. However, Blackmon's argument completely misapprehends the law respecting the instrumentality rule.

First, while a finding that an individual member of a limited liability company personally engaged in certain conduct, such as fraud or misrepresentation, is necessary to support the imposition of individual liability against that member under N.C. Gen. Stat. § 57C-3-30(a), a finding of actual fraud against an individual member is not required to support the imposition of alter ego liability under the instrumentality rule. Rather, the requisite element for piercing the corporate veil under the instrumentality rule requires a finding that the individual member used his control over the entity "to commit fraud *or wrong*, to perpetrate the violation of a statutory or other positive legal duty, *or a dishonest and unjust act in contravention of [the] plaintiffs' legal rights*[.]" *Glenn*, 313 N.C. at 455, 329 S.E.2d at 330 (emphasis added) (internal quotation marks and citation omitted). A showing of actual fraud, in its legal sense, is not a necessary element for the court to pierce the corporate veil. Therefore, the jury's findings addressing fraud are immaterial to their findings addressing breach of contract and piercing the corporate veil.

Similarly, an award of actual damages for claims of fraud and/or unfair and deceptive trade practices is likewise inconsequential to imposing alter ego liability under the instrumentality rule for a breach of contract claim. The requisite element for piercing the corporate veil under the instrumentality rule requires a finding that the individual member's control over the entity and breach of duty "must proximately cause the injury or unjust loss complained of." *Id.* (internal quotation marks and citation omitted). The jury awarded plaintiffs $4.9 million in actual damages on their breach of contract claim. The fact that the jury awarded only nominal damages to plaintiffs on their claims for fraud and unfair and deceptive trade practices has no bearing on the trial court's ability to pierce the corporate veil and hold Blackmon liable for the breach of contract damages awarded by the jury against Moorehead I.

In the present case, the jury was properly instructed concerning the theory of piercing the corporate veil, and in light of these instructions and considering the evidence presented by plaintiffs, the jury returned a verdict finding that Blackmon controlled Moorehead I with respect to the transactions that damaged plaintiffs, as defined under the instrumentality rule. Accordingly, the trial court's judgment imposing alter ego liability against Blackmon for the breach of contract damages found by the jury in issue one of its verdict is proper. Blackmon's arguments that the trial court's judgment improperly concludes and decrees that he is personally liable for the breach of contract damages are without merit.

## IV.  Unfair and Deceptive Trade Practices

[2] In his second and third arguments on appeal, Blackmon addresses the trial court's conclusions and judgment decrees concerning plaintiffs' claim for unfair and deceptive trade practices. Blackmon first contends that the jury's finding of a breach of contract by Moorehead I is insufficient to support a conclusion of liability for unfair and deceptive trade practices. In addition, Blackmon contends that because the jury found no fraud and awarded no actual damages against him individually on any basis, the trial court lacked the requisite finding of fact that plaintiffs were injured by Blackmon to hold him individually liable for unfair and deceptive trade practices.

"In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); *see also* N.C. Gen. Stat. § 75-1.1(a) (2011). "A practice is unfair if it is unethical or unscrupulous,

and it is deceptive if it has a tendency to deceive." *Dalton,* 353 N.C. at 656, 548 S.E.2d at 711. "Moreover, where a party engages in conduct manifesting an inequitable assertion of power or position, such conduct constitutes an unfair act or practice." *Gray v. N.C. Ins. Underwriting Ass'n,* 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). "Good faith is not a defense to an alleged violation of N.C.G.S. § 75-1.1." *Id.*

> The determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court. Ordinarily, once the jury has determined the facts of a case, the court, based on the jury's findings, then determines, as a matter of law, whether the defendant engaged in unfair or deceptive practices in or affecting commerce. Furthermore, . . . it does not invade the province of the jury for this Court to determine as a matter of law on appeal that acts expressly found by the jury to have occurred and to have proximately caused damages are unfair or deceptive acts in or affecting commerce under N.C.G.S. § 75-1.1.

*Id.* (internal quotation marks and citations omitted).

In addressing plaintiffs' unfair and deceptive trade practices claim, the trial court instructed the jury as follows:

> The seventh issue reads: Did any defendants, . . . Bruce Blackmon, Moorehead I, . . . do at least one of the following:

> One: Make a false representation or concealment of a material fact regarding the events to Timothy Hurst and Jeffery Henley of $200,000 on March 12, 2007?

> Two: Alter, slip-sheet or otherwise modify documents executed on March 12, 2007, without the knowledge or consent of Timothy Hurst or the Henleys?

> Three: Make a false representation or concealment of a material fact regarding the 1031 tax-deferred exchange?

> Or, four: Agree to pay Timothy Hurst or Jeffery Henley 4.7 million dollars as described in the June 26, 2006, purchase and sale agreement or 4.5 million dollars as described in the March 13, 2007, promissory note, with no means or intention of carrying out that agreement?

On this issue the burden of proof is on the plaintiffs. This means that the plaintiffs must prove, by the greater weight of the evidence, that the Defendant . . . Bruce Blackmon, Moorehead I, . . . did at least one of the acts as contended by the plaintiffs.

In this case the plaintiffs contend, and the defendants deny, that the Defendants . . . Bruce Blackmon, Moorehead I, LLC, . . . did at least one of the acts described in one through four above.

Finally, as to this issue on which the plaintiffs have the burden of proof, if you find by the greater weight of the evidence that the defendants did at least one of the acts contended by the plaintiffs, then you would answer yes in the space beside each act so found. If, on the other hand, you fail to so find, then you answer no in the space provided.

The eighth issue reads: Was any defendant's conduct a proximate cause of the plaintiffs' injury? You will answer this issue only if you've found in the plaintiffs' favor on the seventh issue. On this issue, the burden of proof is on the plaintiff. This means that the plaintiffs must prove, by the greater weight of the evidence, two things:

First, that the plaintiffs have suffered an injury;

And, second, that the defendants' conduct was the proximate cause of the plaintiffs' injury. . . .

. . . .

[A]s to this issue on which the plaintiffs have the burden of proof, if you find, by the greater weight of the evidence, that the plaintiffs have suffered an injury and that the defendants' conduct proximately caused the plaintiffs' injury, then it would be your duty to answer this issue yes in favor of the plaintiffs. If, on the other hand, you fail to so find, then it would be your duty to answer this issue no in favor of the defendants.

The ninth issue reads: In what amount have the plaintiffs been injured? If you answer the seventh and eighth issue yes in favor of the plaintiffs, the plaintiffs are entitled to recover nominal damages even without proof of

actual damages. Nominal damages consist of some trivial amount, such as one dollar, in recognition of the technical damage caused by the wrongful conduct of the defendants.

As to issues seven and eight, the jury answered "yes" as to both Blackmon and Moorehead I, thereby finding as fact that Blackmon individually had committed at least one of the acts described by the trial court and that such action proximately caused an injury to plaintiffs. The jury awarded nominal damages in the amount of $1.00 to plaintiffs on this issue. Based on the jury's findings of fact, the trial court's judgment contained the following paragraph:

Judgment in the sum of $1.00 is awarded to Plaintiff Hurst Estate and Plaintiff Henleys for unfair or deceptive trade practices from Defendants . . . Bruce B. Blackmon, Jr., Moorehead I, LLC, . . . , jointly and severally, with interest to run at the legal rate.

Blackmon is correct that " 'actions for unfair or deceptive trade practices are distinct from actions for breach of contract . . . and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1.' " *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006) (ellipsis in original) (quoting *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992)). In the present case, however, the jury's verdict for unfair and deceptive trade practices against Blackmon and Moorehead I clearly was not based on the jury's finding of a mere breach of contract by Moorehead I, as such an action was not part of the instructions given to the jury on this issue. Rather, the jury's verdict reveals that it found that both Blackmon and Moorehead I had individually committed one of the four acts described by the trial court in its instructions on this issue. Blackmon challenges neither the trial court's instructions to the jury, nor the sufficiency of the evidence to support the jury's verdict. Each of the four acts described by the trial court, all of which allege false representations or concealment of a material fact and/or establish a fraudulent scheme in procuring the conveyance of the Hurst/Henley tract in connection with the Epic Project, constitute unfair or deceptive acts in commerce in violation of N.C. Gen. Stat. § 75-1.1. *See, e.g., Hardy v. Toler*, 288 N.C. 303, 310-11, 218 S.E.2d 342, 347 (1975) (false representations made by defendants to plaintiff in connection with sale of automobile constituted unfair or deceptive acts or practices in commerce); *Gress v. Rowboat Co.*, 190 N.C. App. 773, 777-78, 661 S.E.2d 278, 282-83 (2008) (facts showing that plaintiff induced defendants to sign a contract by making false

promises which plaintiff had no intention of keeping established fraudu-
lent scheme in which plaintiff's false representations were sufficiently
deceptive under N.C. Gen. Stat. § 75-1.1); *Mapp v. Toyota World, Inc.*,
81 N.C. App. 421, 424-25, 344 S.E.2d 297, 300 (1986) (plaintiff's evidence
showed defendant induced plaintiff to purchase automobile by promis-
ing to allow rescission of the contract by plaintiff, which promise defen-
dant never intended to keep, thereby constituting violation of statutory
prohibition against unfair and deceptive acts).

Furthermore, the fact that the jury neither found Blackmon indi-
vidually liable for fraud nor awarded actual damages to plaintiffs is
inconsequential. Fraud is a separate and distinct legal claim and is not
a required element for an unfair and deceptive trade practices claim.
Indeed, "[t]his Court has held that '*it is not necessary for the plaintiff
to show fraud*, bad faith, deliberate or knowing acts of deception, or
actual deception,' but 'plaintiff must . . . show that the acts complained
of possessed the tendency or capacity to mislead, or created the like-
lihood of deception.' " *Gress*, 190 N.C. App. at 776, 661 S.E.2d at 281
(emphasis added) (ellipsis in original) (quoting *Overstreet v. Brookland,
Inc.*, 52 N.C. App. 444, 452-53, 279 S.E.2d 1, 7 (1981)); *see also Rosenthal
v. Perkins*, 42 N.C. App. 449, 455, 257 S.E.2d 63, 67 (1979) ("We find no
merit in this argument that fraud is a necessary element in the violation
of the Unfair Trade Practices Act.").

In addition, an award of actual damages is not required to support a
finding that plaintiffs were injured by the acts complained of. Rather, as
the trial court instructed, the jury need only find that defendants' unfair
or deceptive act or practice proximately caused an injury to plaintiffs.
*Strates Shows, Inc. v. Amusements of Am., Inc.*, 184 N.C. App. 455,
462, 646 S.E.2d 418, 424 (2007) ("An unfair and deceptive trade practice
claim requires plaintiffs to . . . establish they suffered *actual injury* as
a proximate result of defendants' [unfair or deceptive act]." (emphasis
added) (alteration in original) (internal quotation marks and citations
omitted)). "The jury determines in what amount, if any, the complaining
party is injured and whether the occurrence was the proximate cause
of those injuries." *Ausley v. Bishop*, 133 N.C. App. 210, 217, 515 S.E.2d
72, 77 (1999). This Court has previously recognized that "[t]he measure
of damages applicable to claims for . . . unfair and deceptive trade prac-
tices is broad and remedial[, and encompasses] the concept of award-
ing such damages as will restore the plaintiff to his, her, or its original
condition." *Tradewinds Airlines v. C-S Aviation Svcs.*, ___ N.C. App.
___, ___, 733 S.E.2d 162, 169 (2012). Here, the jury awarded nominal
damages to plaintiffs to compensate for the injuries found by the jury

to have proximately resulted from the various defendants' unfair or deceptive acts. The jury's findings and award of nominal damages are sufficient to support the trial court's judgment against both Blackmon and Moorehead I for unfair and deceptive trade practices. Blackmon's arguments on this issue are without merit.

### V. Judgment Improperly Expanded Jury's Verdict

**[3]** In his fifth argument on appeal, Blackmon argues the trial court's judgment improperly expanded the jury's verdict. Blackmon's argument on this issue is wholly without merit. As Blackmon recognizes, the trial court's judgment did not expand the jury's damages award. Blackmon's sole contention is that the trial court's judgment expands the scope of the jury's verdict by holding him personally liable for damages awarded against Moorehead I, piercing the corporate veil, and decreeing that he and his other entities engaged in unfair and deceptive trade practices. As explained herein, the trial court's judgment with respect to each of these issues is properly supported by the jury's verdict and established law.

### VI. Inconsistent Jury Verdict

**[4]** Blackmon's final argument on appeal is that the jury's verdict is inconsistent, and therefore, the trial court's judgment based thereon is invalid. Specifically, Blackmon argues that the jury's finding him individually liable for unfair and deceptive trade practices is inconsistent with the jury's finding of no fraud and awarding of no punitive damages against Blackmon individually. However, as we have noted above, the issues of fraud and punitive damages are separate and distinct claims from the issue of unfair and deceptive trade practices. The fact that the jury failed to find Blackmon individually liable for plaintiffs' fraud claim or to award punitive damages against him does not detract from the jury's finding that Blackmon individually engaged in a deceptive act or practice in violation of N.C. Gen. Stat. § 75-1.1.

Blackmon likewise argues that the jury's findings of no fraud and no liability for punitive damages against him individually are inconsistent with the jury's finding Moorehead I liable for fraud. Again, Blackmon's entire argument on this issue attempts to read each of plaintiffs' claims as interrelated and codependent. We reiterate that a finding of fraud is not a prerequisite to the jury's finding that Blackmon individually engaged in an unfair or deceptive act or that Blackmon was the alter ego of the corporations he controlled.

Contrary to Blackmon's assertions, we conclude the jury's verdict is entirely logical and consistent with the evidence presented by

plaintiffs in this case. First, the jury found that Moorehead I, a corporation under the complete control and domination of Blackmon, breached the promissory note it had made to plaintiffs, and plaintiffs were damaged thereby in the amount of $4.9 million. Accordingly, the trial court concluded and decreed that Blackmon was the alter ego of Moorehead I, and Blackmon should be held jointly and severally liable on the damages award for breach of contract with Moorehead I. Second, the jury found that Desimone and Mascaro made false representations to plaintiffs at the 12 March 2007 meeting at the Henleys' barn and that during that meeting, both Desimone and Mascaro were acting as agents on behalf of Moorehead I. Accordingly, the jury found Desimone, Mascaro, and Moorehead I liable for fraud and awarded nominal damages. Third, the jury found the fraudulent misrepresentations by Desimone and Mascaro to be particularly egregious and awarded punitive damages against those two individual defendants. Finally, the jury found that Blackmon engaged in one of the four acts described by the trial court, likely the issuance of the $4.5 million promissory note to plaintiffs with no intention or means of repaying the sum to them, which constituted an unfair or deceptive act, thereby causing injury to plaintiffs. The jury awarded at least nominal damages, recognizing the injury to plaintiffs. The jury's total damages award compensates plaintiffs for the loss complained of resulting from defendants' actions in this case. Blackmon's argument on this issue is entirely without merit.

## VII. Conclusion

We hold the jury's factual findings in the present case are entirely logical and consistent, and the jury's verdict supports the trial court's conclusions of law and judgment decrees that Blackmon is the alter ego of Moorehead I and is therefore jointly and severally liable for the breach of contract damages awarded by the jury to plaintiffs against Moorehead I, and that both Moorehead I and Blackmon individually engaged in unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1. The trial court's judgment did not improperly expand the scope of the jury's verdict. Accordingly, we affirm the trial court's judgment.

Affirmed.

Judges BRYANT and HUNTER, JR. (Robert N.) concur.