Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC, 2017 NCBC 89.

STATE OF NORTH CAROLINA

BUNCOMBE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
14 CVS 1783

INSIGHT HEALTH CORP. d/b/a
INSIGHT IMAGING,

        Plaintiff,

v.

MARQUIS DIAGNOSTIC IMAGING
OF NORTH CAROLINA, LLC;
MARQUIS DIAGNOSTIC IMAGING,
LLC; JOHN KENNETH LUKE;
GENE VENESKY; and TOM
GENTRY,

        Defendants.

**ORDER AND OPINION ON
PLAINTIFF'S MOTION *IN LIMINE***

1. **THIS MATTER** is before the Court upon Plaintiff Insight Health Corp.'s ("Insight") Motion *in Limine* (the "Motion") in the above-captioned case.

2. After considering the Motion, the arguments of counsel for the parties at the September 11, 2017 hearing on the Motion, and the briefs by the parties in support of and in opposition to the Motion, the Court hereby **GRANTS in part** and **DENIES in part** Insight's Motion as follows.

> *Smith Moore Leatherwood, LLP, by Marcus C. Hewitt and Jeffery R. Whitley, for Plaintiff Insight Health Corporation d/b/a Insight Imaging.*
>
> *Roberts & Stevens, P.A., by Wyatt S. Stevens, Ann-Patton Hornthal, and John D. Noor, for Defendants Marquis Diagnostic Imaging of North Carolina, LLC, Marquis Diagnostic Imaging, LLC, John Kenneth Luke, Gene Venesky, and Tom Gentry.*

Bledsoe, Judge.

# I.

## FACTUAL & PROCEDURAL BACKGROUND

3. This case is currently scheduled for trial commencing on November 6, 2017.

4. The factual and procedural background of the case is recited in detail in *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2017 NCBC LEXIS 14 (N.C. Super. Ct. Feb. 24, 2017). The alleged facts and procedural history pertinent to the resolution of the present Motion are set forth below.

5. This action concerns a lease agreement for a magnetic resonance imaging ("MRI") scanner between Insight and Defendant Marquis Diagnostic Imaging of North Carolina, LLC ("MDI-NC"). Insight also asserts claims against Marquis Diagnostic Imaging, LLC ("MDI"), John Kenneth Luke ("Luke"), and Gene Venesky ("Venesky") (collectively, with MDI-NC, the "Defendants"). MDI is the sole member of MDI-NC and several related entities, and Luke and Venesky are the only membership interest holders in MDI.

6. The focal point of Insight's lawsuit is a leasing agreement (the "MRI Agreement") Insight entered into with MDI-NC in mid-2012, under which Insight provided MDI-NC with a Siemens Espree MRI scanner, support staff, and services for a monthly fee. *Insight Health Corp. v. Marquis Diagnostic Imaging of N.C., LLC*, 2017 NCBC LEXIS 14, at *5–6 (N.C. Super. Ct. Feb. 24, 2017). A little more than a year after the parties entered into the agreement, MDI-NC ceased its operations and sold its assets to another company. *Id.* at *8. Consequently, MDI-NC stopped using Insight's MRI scanner and stopped making payments under the MRI Agreement. *Id.*

7.     Insight contends that none of the $1.15 million MDI-NC realized as a result of this asset sale was used to make further payments owed to Insight. As a result, Insight brings claims against MDI-NC for breach of contract and unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1. Insight also contends that MDI, Luke, and Venesky are liable for its damages, bringing claims against the parent LLC and the individual defendants for breach of fiduciary duty and constructive fraud and asking the Court to pierce MDI-NC's corporate veil in order to hold all Defendants liable for successful claims against MDI-NC.[1]

8.     In response to Insight's instigation of this litigation, Defendants asserted affirmative defenses and counterclaims against Insight relating to a series of negotiations between the parties that predated the MRI Agreement. According to Defendants, in 2011, Insight had expressed to Luke and Venesky its interest in buying MDI-NC's assets. *Id.* at \*3. Negotiations regarding the potential deal (the "Failed Asset Purchase") continued on until mid-2013, at which point negotiations broke down, and MDI-NC's assets were eventually sold to another entity. *Id.* at \*3–8. Defendants claimed that the Failed Asset Purchase and the MRI Agreement were related agreements and brought counterclaims for fraud in the inducement and unfair or deceptive trade practices against Insight based upon its failure to go forward with the Failed Asset Purchase. Defendants also claimed Insight's failure to buy

---

[1] Insight also brought claims against Defendants for fraudulent transfer under N.C. Gen. Stat. § 39-23 *et seq.* and wrongful distribution and personal liability under former N.C. Gen. Stat. § 57C-4-06 *et seq. Insight Health Corp.*, 2017 NCBC LEXIS 14, at \*10. Insight later voluntarily dismissed these claims. (Partial Voluntary Dismissal & Withdrawal Certain Claims Without Prejudice 1, ECF No. 182.)

MDI-NC's assets gave rise to several affirmative defenses that extinguished any obligations Defendants had under the MRI Agreement.

9. In an Order and Opinion dated February 24, 2017, the Court found Defendants' affirmative defenses to be legally deficient, dismissed Defendants' counterclaims, and granted summary judgment for Insight on its breach of contract claim. *See generally id.* In so ruling, the Court found that the "undisputed facts show[ed] that the Insight MRI Agreement was a separate transaction" from the Failed Asset Purchase and that "Insight was not bound to the terms proposed for the [Failed Asset Purchase.]" *Id.* at *27.

10. In that same Order and Opinion, the Court ruled on a motion by Insight to exclude certain testimony from Defendants' expert witness, Marcus Hodge ("Hodge"). Originally, Hodge was expected to testify as to (1) MDI-NC's damages, (2) Hodge's own calculation of Insight's damages, and (3) Hodge's critiques of Insight's expert's calculations regarding Insight's damages. *Id.* at *38. Defendants then withdrew Hodge's proposed calculation of Insight's damages and have not since indicated they intend to offer the calculation at trial. With the Court's subsequent dismissal of Defendants' claims against Insight, the Court concluded that Hodge would serve primarily as a rebuttal expert and would not testify regarding MDI-NC's damages.[2] *Id.* at *39, *47. Additionally, the Court concluded that Hodge would be able to discuss, as part of his critique of Insight's expert testimony, Insight's expert's failure to include in his calculations revenue Insight received from a lease agreement

---

[2] The Court did not rule on the admissibility of the voluntarily withdrawn testimony.

amendment Insight entered into following MDI-NC's breach of contract (the "Springfield Amendment"). *Id.* at \*43. The Court excluded, however, Hodge's opinions "regarding additional mitigating revenue under, or the unreasonableness of the amount of revenue under, the Springfield Amendment[.]" *Id.* at \*43–44.

11.     Insight's Motion asks the Court to bar Defendants from introducing (1) evidence or argument relating to the Failed Asset Purchase, including the negotiations leading up to it, (2) expert witness testimony or opinions calculating or quantifying Insight's damages, and (3) any portions of an expert report that quantifies or calculates Insight's damages or asserts damages sustained by MDI-NC due to the Failed Asset Purchase.

II.

LEGAL STANDARD

12.     "A motion *in limine* seeks pretrial determination of the admissibility of evidence to be introduced at trial." *State v. Britt*, 217 N.C. App. 309, 313, 718 S.E.2d 725, 728 (2011). The Court's ruling on motions *in limine* is interlocutory and "subject to modification during the course of the trial." *Hamilton v. Thomasville Med. Assocs.*, 187 N.C. App. 789, 792, 654 S.E.2d 708, 710 (2007) (quoting *Heatherly v. Indus. Health Council*, 130 N.C. App. 616, 619, 504 S.E.2d 102, 105 (1998)).

III.

ANALYSIS

A.    Evidence of the Failed Asset Purchase

13.    Insight first asks the Court to exclude evidence or testimony about the Failed Asset Purchase as irrelevant under Rules 401 and 402 of the North Carolina Rules of Evidence.  Defendants contend they should be allowed to introduce evidence of the Failed Asset Purchase to give the jury context for the breach of the MRI Agreement—particularly context about Defendants' rationale for breaching the agreement.  Defendants appear to forecast that they wish to introduce this evidence to convince the jury that, among other things, they did not refuse to pay Insight in bad faith but legitimately thought they had a legal right not to do so.  Defendants also argue that evidence of the Failed Asset Purchase explains the financial condition of MDI-NC leading up to the breach of the MRI Agreement.

14.    North Carolina Rule of Evidence 402 broadly proclaims that, unless barred by specific limitations, "[a]ll relevant evidence is admissible[.]"  N.C. R. Evid. 402.  Irrelevant evidence, on the other hand, is always inadmissible.  *Id.*  Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of [an] action more probable or less probable[.]"  N.C. R. Evid. 401.  Thus, trial judges are given "great freedom to admit evidence . . . if it has *any* logical tendency to prove any fact that is of consequence." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991).  In this case, the Court believes

evidence of the Failed Asset Purchase may be relevant to some, but not all, of Insight's claims.

### 1. Breach of Fiduciary Duty

15. To begin with, evidence of the Failed Asset Purchase is not relevant to Insight's claim for breach of fiduciary duty.

16. When an LLC finds itself in circumstances amounting to a winding-up or dissolution, the managers of the LLC owe a fiduciary duty to the LLC's creditors to treat members of the same creditor class fairly and equally. *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 33, 560 S.E.2d 817, 827 (2002) (citing *Bassett v. Pamlico Cooperage Co.*, 188 N.C. 511, 512, 125 S.E. 14, 14 (1924)); *Old Battleground Props. v. Cent. Carolina Surgical Eye Assocs., P.A.*, 2015 NCBC LEXIS 19, at *22 (N.C. Super. Ct. Feb. 25, 2015). In order to answer whether a manager breached this duty, a jury must determine (1) if the manager owed a fiduciary duty to the plaintiff at any point in time, (2) if so, when that duty arose, and (3) whether or not that duty was breached, for instance, by failing to treat all creditors of the same class equally on a pro rata basis. *Keener Lumber Co.*, 149 N.C. App. at 33, 560 S.E.2d at 826–27.

17. The Court concludes that evidence about the Failed Asset Purchase is not relevant to this inquiry. At trial, the jury will have to determine whether a fiduciary relationship existed between the parties and, if so, whether it was breached. These questions concern the legal reality of Defendants' obligations and actions. Defendants' subjective belief that they owed no fiduciary duty to Insight because of the Failed Asset Purchase does not change the objective nature of the parties'

relationship. In particular, facts about the Failed Asset Purchase do not make it more or less probable that MDI-NC was winding up, that Insight was a creditor of MDI-NC due to the MRI Agreement, or that Defendants failed to treat Insight equally with MDI-NC's other creditors. The Court will thus exclude as irrelevant evidence of the Failed Asset Purchase as it relates to Insight's claim for breach of fiduciary duty.

### 2. Constructive Fraud

18. The Court also concludes evidence of the Failed Asset Purchase is not relevant to Insight's claim of constructive fraud.

19. Constructive fraud, despite its name, is based on the existence of a "confidential relationship rather than a specific misrepresentation." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678–79 (1981). To recover, a plaintiff must prove "facts and circumstances (1) which created [a] relation of trust and confidence, and (2) which led up to and surrounded the consummation of the transaction in which [the] defendant is alleged to have taken advantage of his position of trust to the hurt of [the] plaintiff." *Id.* at 85, 273 S.E.2d at 679. "When the superior party in a fiduciary relationship obtains a benefit through abuse of that relationship, the [injured party] may recover for constructive fraud." *BDM Invs. v. Lenhil, Inc.*, 2014 NCBC LEXIS 6, at *24 (N.C. Super. Ct. Mar. 20, 2014) (citing *Forbis v. Neal*, 361 N.C. 519, 529, 649 S.E.2d 382, 388 (2007)).

20. Notably, a plaintiff's success in proving constructive fraud hinges upon proving the existence of these facts and circumstances. *Keener Lumber Co.*, 149 N.C. App. at 28, 560 S.E.2d at 823. Evidence of the defendant's intent or mindset is not

required. *See Miller v. First Nat'l Bank*, 234 N.C. 309, 316, 67 S.E.2d 362, 367 (1951) ("Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud."). Therefore, where the defendant has abused a fiduciary relationship and obtained a benefit, the defendant's rationale for doing so does not operate as a shield to liability.

21. To recover against Defendants, Insight must prove the existence of facts and circumstances amounting to constructive fraud, but these facts and circumstances do not include a culpable mindset on the part of Defendants. Much as Defendants wish to introduce evidence of the Failed Asset Purchase to "explain their rationale" for failing to pay Insight, (Resp. Opp'n Pl.'s Mot. Lim. 10, ECF No. 180), that subjective rationale does not make it more or less probable that Defendants obtained a benefit for themselves by breaching an alleged fiduciary duty to Insight. Thus, the Court concludes evidence of the Failed Asset Purchase is not relevant to Insight's claim for constructive fraud.

### 3. Piercing the Corporate Veil

22. Piercing of the corporate veil is not a distinct legal theory of liability but an equitable doctrine by which a plaintiff may breach the shield of limited liability that the corporate form typically provides. *Green v. Freeman*, 367 N.C. 136, 146, 749 S.E.2d 262, 271 (2013). North Carolina law allows a plaintiff to disregard the corporate form of its opponent when the target corporation is in fact the "mere instrumentality or alter ego" of another entity or individual. *Estate of Hurst v. Moorehead I, LLC*, 228 N.C. App. 571, 577, 748 S.E.2d 568, 574 (2013). Limited

liability companies are also vulnerable to this treatment. *Id.* at 576, 748 S.E.2d at 573.

23. Under the mere instrumentality rule, the corporate form of an LLC may be disregarded where the defendant (1) controlled the conduct of the entity such that it had no separate mind, will, or existence of its own, (2) used that control "to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of [the] plaintiff's legal rights," and (3) proximately caused the plaintiff's injury. *Id.* at 577–78, 748 S.E.2d at 574 (quoting *Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985)). Factors that support the first prong of this rule include the inadequate capitalization of the controlled entity, non-compliance with the formalities required of the entity, complete domination and control resulting in a lack of independent identity for the entity, and "excessive fragmentation of a single enterprise into separate" entities. *Glenn*, 313 N.C. at 455, 458, 329 S.E.2d at 330–31. Though the doctrine of piercing is an equitable one, the decision to disregard the corporate form ultimately rests on these factual issues. As such, it may be submitted to the jury. *Id.* at 459, 329 S.E.2d at 333 ("Since the issue is one of fact, the trial court should take pains to spell out in its instructions the specific factors to be considered in determining whether the corporate entity should be disregarded."); *see* N.C.P.I.-Civil 103.40 (Pattern Jury Instr. Comm. 2014) (instructing the jury that they may consider a multitude of factors in determining whether the plaintiff has proven the first prong of the mere instrumentality rule).

24.     In this case, it appears that evidence of the Failed Asset Purchase may be relevant to Insight's request to pierce the corporate veil, depending upon the evidence by which Insight seeks to acquire this relief.  At trial, the jury will be asked to determine whether MDI, Luke, and Venesky operated MDI-NC in such a way that MDI-NC had no separate mind, will, or existence of its own.  Depending upon what evidence Insight introduces in asserting MDI-NC was a mere instrumentality used by Defendants, the jury may be instructed that they may consider whether MDI-NC was inadequately capitalized.

25.     With regard to this factor, a distinction is made between "inadequate capitalization borne out of deception or fraud" and that resulting from a lack of funding.  *Cold Springs Ventures, LLC v. Gilead Scis., Inc.*, 2015 NCBC LEXIS 1, at *25 (N.C. Super. Ct. Jan. 6, 2015) (citing Russell M. Robinson II, *Robinson on North Carolina Corporation Law* § 2.10[2] (7th ed. 2002)).  Should Insight seek to argue inadequate capitalization weighs in favor of piercing the corporate veil, it appears to the Court that the Failed Asset Purchase provides relevant context about MDI-NC's finances at the time MDI-NC failed to pay Insight under the MRI Agreement.  Evidence showing that MDI-NC experienced financial difficulties in part because of Defendants' incorrect belief MDI-NC had a binding contract with Insight for an asset purchase may make it less probable that Defendants inadequately capitalized MDI-NC in an attempt to abuse the limited liability the LLC form offers.

26.     In contrast, it does not appear to the Court that evidence of the Failed Asset Purchase is relevant to arguments seeking to pierce the corporate veil based solely

on Defendants' domination and control of the LLC. Based upon the forecast evidence, the Court cannot conclude that evidence of the Failed Asset Purchase would make it more or less probable that Defendants respected the formalities of operating an LLC, completely dominated MDI-NC, or excessively fragmented a single enterprise into multiple entities. These factors, which the jury may be instructed to consider, focus solely on how Defendants operated MDI-NC and its sister entities. As such, evidence of the negotiations surrounding the Failed Asset Purchase appears to be irrelevant to any effort by Defendants to counter evidence of their domination and control of MDI-NC. The Court reserves the right to revisit these determinations in light of the evidence developed at trial.

### 4. Unfair or Deceptive Trade Practices, N.C. Gen. Stat. § 75-1.1

27. Insight also brings a claim under N.C. Gen. Stat. § 75-1.1 for unfair or deceptive trade practices. A prima facie claim under section 75-1.1 requires a plaintiff to prove (1) the defendant committed an unfair or deceptive act, (2) the act in question was in or affecting commerce, and (3) the act was the proximate cause of the plaintiff's injuries. *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001). When a section 75-1.1 claim is brought to trial, it is ordinarily "for the jury to determine the facts [as they relate to the claim], and based on the jury's finding, the court [will] then determine as a matter of law whether the defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce." *Hardy v. Toler*, 288 N.C. 303, 310, 218 S.E.2d 342, 346–47 (1975).

28. As a general rule, the plaintiff's intent and conduct surrounding the section 75-1.1 claim are irrelevant, and the defendant's good faith is not a defense to an alleged violation—the crux of the claim is the effect of the defendant's conduct on commerce. *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) ("If unfairness and deception are gauged by consideration of the effect of the practice on the marketplace, it follows that the intent of the actor is irrelevant."); *Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433, 452, 678 S.E.2d 671, 683–84 (2009) ("[N]ot only is the defendant's intent irrelevant when evaluating a [section 75-1.1] claim, the plaintiff's intent and conduct [are] also irrelevant.").

29. As is frequent with general rules, however, exceptions are inevitable. Section 75-1.1 claims can be, and are, based upon a wide set of facts and circumstances. *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013) (noting that section 75-1.1 is broad "and covers more than traditional common law proscriptions on tortious conduct"). As a result, a defendant's motives may become relevant under certain theories of liability under section 75-1.1.

30. For example, a defendant who intentionally breaches a contract does not, by that action, commit a violation of section 75-1.1. *Id.* On the other hand, where a plaintiff shows not only an intentional breach but also that substantial aggravating circumstances accompanied that breach, a claim for unfair or deceptive trade practices may lie. *Forest2Market, Inc. v. Arcogent, Inc.*, 2016 NCBC LEXIS 3, at *13 (N.C. Super. Ct. Jan. 5, 2016) (citing *Branch Banking & Trust Co. v. Thompson*, 107

N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992)). These aggravating circumstances typically include "forged documents, lies, and fraudulent inducements." *Id.* at *14.

31. As a result, in a case where a plaintiff seeks to prove the existence of such circumstances, evidence of a defendant's state of mind may be relevant—such evidence may make it more or less probable documents were forged, misrepresentations were intentional, or other egregious factors accompanied a breach of contract. *See Taylor v. United States*, 89 F. Supp. 3d 766, 773 (E.D.N.C. 2014) ("[A] defendant's conduct in exercising *perceived* rights . . . under a contractual agreement with another party, even if allegedly contrary to the . . . terms of the agreement, does not form the basis for a [section 75-1.1] claim." (emphasis added)), *aff'd per curiam*, 602 F. App'x 570 (4th Cir. 2015); *see also Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 347 (4th Cir. 1998) ("The courts differentiate between contract and [section 75-1.1] claims, and relegate claims regarding the existence of an agreement, the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law.").[3]

32. In short, a defendant's intent or good faith does not prevent conduct from being unfair or deceptive under section 75-1.1, *Marshall*, 302 N.C. at 548, 276 S.E.2d at 403, and facts involving fraud, bad faith, or deliberate acts of deception are not necessary to prove a section 75-1.1 claim, *Edwards v. West*, 128 N.C. App. 570, 574–75, 495 S.E.2d 920, 924 (1998). Nevertheless, where a plaintiff opens the door by

---

[3] While this Court is not bound by federal precedent, it may consult federal case law as a source of persuasive analysis and reasoning. *Brown v. Centex Homes*, 171 N.C. App. 741, 744, 615 S.E.2d 86, 88 (2005).

attempting to convince the jury such facts occurred in order to prove a section 75-1.1 claim, a defendant should logically be able to introduce evidence that tends to show the absence of those same facts. The relevance of evidence about the defendant's motive or intent hinges on the underlying facts the plaintiff seeks to prove to the jury.

33. At present, the Court is not prepared to conclude that evidence of the Failed Asset Purchase is irrelevant to Insight's claim under section 75-1.1. The theory by which Insight seeks to prove its unfair or deceptive trade practices claim is not yet concrete. Initially, Insight pleaded its section 75-1.1 claim by alleging "Defendants [actions] . . . constitute[d] unfair and deceptive acts or practices because . . . [Defendants] deliberately transferred assets with the intent to hinder, delay or defraud [MDI-NC's] business creditors and to avoid satisfying a legitimate debt[,]" and that Defendants "delayed the winding up and liquidation of the business and affairs of [MDI-NC] with the intent to defraud their business creditors." (Am. Compl. ¶¶ 79–80, ECF No. 61.) Insight has since voluntarily dismissed its claims for fraudulent transfer and wrongful distribution and personal liability, but Insight's section 75-1.1 claim continues to trial supported, in part, by the same facts underlying Insight's successful breach of contract claim. If Insight intends to argue Defendants' actions were unfair or deceptive based on an improper motive or intent accompanying Defendants' breach of contract, evidence of the Failed Asset Purchase may be relevant because such evidence may tend to rebut that alleged motive or intent. Therefore, the Court, in the exercise of its discretion, defers ruling on the admissibility of

evidence of the Failed Asset Purchase as it relates to Insight's section 75-1.1 claim until the presentation of evidence at trial.

### 5. North Carolina Rule of Evidence 403

34. To the extent evidence of the Failed Asset Purchase is relevant, it will not be excluded under Rule 403 at this point in the case. Under Rule 403, relevant evidence may be excluded if its "probative value is substantially outweighed by" its tendency to unfairly prejudice a party, confuse the issues, mislead the jury, or unduly waste the Court's time. N.C. R. Evid. 403. Whether to exclude relevant evidence on this ground "is a matter left to the sound discretion of the trial court." *State v. Hoffman*, 349 N.C. 167, 184, 505 S.E.2d 80, 91 (1998).

35. The Court concludes, in the exercise of its discretion, that to the extent evidence of the Failed Asset Purchase is held to be relevant, its probative value is not substantially outweighed by the dangers Rule 403 guards against. To the extent Insight seeks to allege liability-inducing motives on the part of Defendants, and to the extent that evidence renders details about the Failed Asset Purchase relevant, Defendants should be allowed to provide contextual facts to explain their conduct. Nevertheless, in light of the Court's dismissal of Defendants' claims and affirmative defenses against Insight, it appears to the Court that evidence or arguments imputing actual fraudulent or improper conduct to Insight in connection with the Failed Asset Purchase fail the balancing test of Rule 403. Defendants may explain the basis for their incorrect assumptions and beliefs regarding their obligations to Insight when such evidence is relevant; they do not get another chance to litigate the

claims and affirmative defenses the Court has dismissed. The Court reserves the right to revisit these determinations in light of evidence developed at trial.

B. Expert Testimony

36. At the September 11, 2017 hearing, the parties agreed that the provisions of Insight's Motion regarding Hodge's opinions and testimony are consistent with the Court's previously entered Order and Opinion. As noted above, that Opinion stated the Court would permit Hodge to testify as a rebuttal witness but would exclude (1) Hodge's testimony regarding any additional mitigating revenue he believed Insight could have received under the Springfield Amendment and (2) Hodge's opinions about the reasonableness of the amount of revenue received under the Springfield Amendment. Defendants represented that they will not offer expert opinions or testimony giving an alternative calculation or total for Insight's damages. The Court therefore believes granting Insight's Motion as ordered below is appropriate.

IV.

CONCLUSION

37. For the foregoing reasons, the Court, after considering North Carolina Rules of Evidence 401, 402, and 403, in the exercise of its discretion, and without prejudice to the Court's right to modify its Motion *in Limine* rulings during the course of the trial, hereby **GRANTS in part and DENIES in part** Insight's Motion *in Limine* as follows:

    a. As to evidence of the Failed Asset Purchase:

i.  The Court will not allow evidence or argument regarding the potential acquisition of MDI-NC's assets by Insight as that evidence or argument relates to Insight's claims for breach of fiduciary duty and constructive fraud.

ii. Evidence or argument regarding the potential acquisition of MDI-NC's assets by Insight will be considered relevant to the extent Insight seeks to pierce the corporate veil by evidence and argument alleging Defendants undercapitalized MDI-NC for improper reasons.  Evidence or argument regarding the potential acquisition of MDI-NC's assets by Insight will not be considered relevant to the extent Insight seeks to pierce the corporate veil by evidence or argument alleging Defendants dominated or controlled MDI-NC in such a way as to abuse the form of an LLC.

iii. The Court otherwise defers ruling on the admissibility of evidence or argument regarding the potential acquisition of MDI-NC's assets by Insight.

iv. In light of the Court's rulings, the Court directs the parties to meet and confer and be prepared to discuss with the Court at the pretrial conference in this case (i) whether either party may refer to the Failed Asset Purchase in opening statements and (ii) any request by either party for, and the proposed language of,

appropriate limiting instructions should the Court admit evidence of the Failed Asset Purchase at trial.

b. As to Defendants' expert testimony:

i. Hodge will be permitted to testify as a rebuttal witness.

ii. Hodge will not be permitted to testify regarding additional mitigating revenue he believes Insight could have obtained through the Springfield Amendment or the reasonableness of the revenue Insight did receive through the Springfield Amendment.

**SO ORDERED**, this the 3rd day of October, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases