Window World of Baton Rouge, LLC v. Window World, Inc.; Window World of St. Louis, Inc. v. Window World, Inc., 2017 NCBC 58.

STATE OF NORTH CAROLINA

WILKES COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1

WINDOW WORLD OF BATON
ROUGE, LLC; WINDOW WORLD OF
DALLAS, LLC; WINDOW WORLD
OF TRI STATE AREA, LLC; and
JAMES W. ROLAND,

                Plaintiffs,

  v.

WINDOW WORLD, INC.; WINDOW
WORLD INTERNATIONAL, LLC;
and TAMMY WHITWORTH,

                Defendants.

**ORDER AND OPINION ON
DEFENDANT TAMMY
WHITWORTH'S
MOTION TO DISMISS**

WILKES COUNTY

15 CVS 2

WINDOW WORLD OF ST. LOUIS,
INC.; WINDOW WORLD OF
KANSAS CITY, INC.; WINDOW
WORLD OF SPRINGFIELD/PEORIA,
INC.; JAMES T. LOMAX III;
JONATHAN GILLETTE; B&E
INVESTORS, INC.; WINDOW
WORLD OF NORTH ATLANTA,
INC.; WINDOW WORLD OF
CENTRAL ALABAMA, INC.;
MICHAEL EDWARDS; MELISSA
EDWARDS; WINDOW WORLD OF
CENTRAL PA, LLC; ANGELL P.
WESNERFORD; KENNETH R.
FORD, JR.; WORLD OF WINDOWS
OF DENVER, LLC; RICK D. ROSE;
CHRISTINA M. ROSE; WINDOW
WORLD OF ROCKFORD, INC.;
WINDOW WORLD OF JOLIET, INC.;
SCOTT A. WILLIAMSON;
JENNIFER L. WILLIAMSON; BRIAN
C. HOPKINS; WINDOW WORLD OF
LEXINGTON, INC.; TOMMY R.

JONES; JEREMY T. SHUMATE;
WINDOW WORLD OF PHOENIX
LLC; JAMES BALLARD; and TONI
BALLARD,

                Plaintiffs,

v.

WINDOW WORLD, INC.; WINDOW
WORLD INTERNATIONAL, LLC;
and TAMMY WHITWORTH,

                Defendants.

1.      **THIS MATTER** is before the Court upon Defendant Tammy Whitworth's

("Ms. Whitworth") Motions to Dismiss (the "Motions") and Plaintiffs' Notices of Objection

to Materials Outside of the Pleadings Offered in Support of 12(b)(6) Motions (the "Objections")

in the above-captioned cases.  Having considered the Motions and the Objections, briefs in

support of and in opposition to the Motions, and the arguments of counsel at the hearing on the

Motions, the Court **SUSTAINS** the Objections and **DENIES** the Motions.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Jeffrey E. Oleynik, Charles E. Coble, Benjamin R. Norman, and Andrew L. Rodenbough, and Keogh Cox & Wilson, Ltd, by John P. Wolff, III, for Plaintiffs Window World Of Baton Rouge, LLC; Window World Of Dallas, LLC; Window World Of Tri State Area, LLC; James W. Roland; Window World of St. Louis, Inc.; Window World of Kansas City, Inc.; Window World of Springfield/Peoria, Inc.; James T. Lomax III; Jonathan Gillette; B&E Investors, Inc.; Window World of North Atlanta, Inc.; Window World of Central Alabama, Inc.; Michael Edwards; Melissa Edwards; Window World of Central PA, LLC; Angell P. Wesnerford; Kenneth R. Ford, Jr.; World of Windows of Denver, LLC; Rick D. Rose; Christina M. Rose; Window World Of Rockford, Inc.; Window World of Joliet, Inc.; Scott A. Williamson; Jennifer L. Williamson; Brian C. Hopkins; Window World of Lexington, Inc.; Tommy R. Jones; Jeremy T. Shumate; Window World of Phoenix LLC; James Ballard; and Toni Ballard.*
>
> *Bell, Davis and Pitt, P.A., by Alan M. Ruley and Andrew A. Freeman, for Defendant Tammy Whitworth.*

Bledsoe, Judge.

## I.

## INTRODUCTION

2.     Plaintiffs in *Window World of Baton Rouge, LLC v. Window World, Inc.* (15 CVS 1) (the "Roland Action") and in *Window World of St. Louis, Inc. v. Window World, Inc.* (15 CVS 2) (the "Lomax Action") (collectively, "Plaintiffs") allege that they are Window World, Inc. ("WW") franchisees.  (Roland Third Am. Compl. ¶ 2, hereinafter "Roland TAC"; Lomax Third Am. Compl. ¶ 2, hereinafter "Lomax TAC".)  As the basis for their claims, Plaintiffs generally contend that WW knowingly and intentionally withheld information that Plaintiffs were entitled to receive under federal franchise law, failed to meet its commitment to provide Plaintiffs access to the best available wholesale prices, and required Plaintiffs to execute license agreements that conflicted with the manner in which the parties had done business in the past.  (Roland TAC ¶¶ 3–4; Lomax TAC ¶¶ 3–4.)

3.     After discovering these allegedly improper practices, certain Plaintiffs complained to WW.  (Roland TAC ¶ 5; Lomax TAC ¶ 5.)  These Plaintiffs entered into negotiations with WW, entered into a tolling agreement with the company, and ultimately reached a settlement.  (Roland TAC ¶¶ 6–7; Lomax TAC ¶¶ 6–7.)  Plaintiffs allege that WW thereafter reneged on this settlement, and, subsequently, Plaintiffs brought this action, (Roland TAC ¶¶ 8–9; Lomax TAC ¶¶ 8–9), asserting claims for breach of contract, fraud, negligent misrepresentation, unfair or deceptive trade practices, unjust enrichment, and fraudulent transfer, and seeking entry of

declaratory judgments, reformation of Plaintiffs' licenses, and injunctive relief. (Roland TAC ¶¶ 222–300; Lomax TAC ¶¶ 321–405.) Plaintiffs also seek to hold Window World International, LLC ("WWI") and Ms. Whitworth liable for each cause of action asserted against WW under the doctrine of piercing the corporate veil, contending that WW is a mere instrumentality or alter ego of each. (Roland TAC ¶ 163; Lomax TAC ¶ 262.)

4.      Through these Motions, Ms. Whitworth seeks to dismiss Plaintiffs' piercing the corporate veil remedy against her.

II.

FACTUAL BACKGROUND

5.      The Court does not make findings of fact on Motions to Dismiss under Rule 12(b)(6), but only recites those allegations included in each Complaint that are relevant to the Court's determination of the Motions.

6.      WW is a North Carolina franchisor that operates a network of approximately 200 franchises across the United States, including Plaintiffs' franchises. (Roland TAC, ¶¶ 11–13, 15, 20, 23; Lomax TAC ¶¶ 12–14, 50, 55, 58.) Under their franchise relationships with WW, Plaintiffs and other WW franchisees purchase vinyl replacement windows, doors and siding, related accessories, and other WW trademarked items from WW's approved vendors. (Roland TAC ¶ 20; Lomax TAC ¶ 55.) The franchisees then resell to, and install the products for, customers. (Roland TAC ¶ 20; Lomax TAC ¶ 55.)

7.    Plaintiffs allege that they became aware of numerous wrongs committed by WW, and in 2012, some of them sought to resolve these issues by negotiating a settlement with WW.  (Roland TAC ¶¶ 3–5, 157; Lomax TAC ¶¶ 3–5, 237.)  As part of these negotiations, Plaintiffs allege that the Roland Action Plaintiffs and Lomax Action Plaintiffs James T. Lomax III, Jonathan Gillette, WW of St. Louis, Inc., WW of Kansas City, Inc., and WW of Springfield/Peoria, Inc. entered into a tolling agreement with WW on April 23, 2013, which tolled all causes of action asserted by Plaintiffs except for two in the Lomax Action that were subsequently dismissed by this Court (the "Tolling Agreement").  (Roland TAC ¶ 157; Lomax TAC ¶¶ 17, 256.) Plaintiffs additionally allege that WW is estopped from relying on any statute of limitation or laches defense because of its unclean hands, bad faith, and unfair or deceptive conduct, (Roland TAC ¶ 160; Lomax TAC ¶ 259), and barred from relying on any statute of limitation defense in light of the continuing wrong doctrine, (Roland TAC ¶ 161; Lomax TAC ¶ 260).  Plaintiffs further allege that WW's wrongful conduct continued at all times up to the filing of the original complaint in these actions on January 2, 2015.  (Roland TAC ¶ 161; Lomax TAC ¶ 260.)

8.    Plaintiffs also allege that, "during the time period in which Plaintiffs' legal claims arose, all outstanding shares of the WW stock were owned and controlled by the Whitworth family, first by Leon and Marie Whitworth, then by their son Todd Whitworth, and finally by Todd's widow Tammy Whitworth and a revocable trust that she alone controls."  (Roland TAC ¶ 165; Lomax TAC ¶ 264.)  Plaintiffs further contend that, since her husband's death, Ms. Whitworth's control has "permeated the

entire company and extended from WW's finances to its policy making and business practices" such that WW and its affiliates and subsidiaries "had no separate mind, will, or existence of their own apart from Tammy Whitworth[.]" (Roland TAC ¶ 166; Lomax TAC ¶ 265.)

9. More specifically, Plaintiffs allege that on March 22, 2010, Ms. Whitworth became the sole shareholder of WW after the death of her husband, Todd, and appointed herself WW's CEO at a time when WW had no board of directors. (Roland TAC ¶ 176; Lomax TAC ¶ 275.) Soon thereafter, but before WW reinstated its board of directors, Plaintiffs allege that Ms. Whitworth (i) transferred all of WW's shares to the Tammy E. Whitworth Revocable Trust (the "Revocable Trust"), which Ms. Whitworth solely controls, (Roland TAC ¶ 178; Lomax TAC ¶ 277), (ii) caused WWI to be created in anticipation of litigation, (Roland TAC ¶ 200; Lomax TAC ¶ 299), and (iii) thereafter, on June 23, 2010, caused WW's "only significant asset"—its intellectual property—to be transferred to WWI, for no value, (Roland TAC ¶¶ 169, 178, 201, 202; Lomax TAC ¶¶ 268, 277, 300, 301).

10. Plaintiffs further assert that Ms. Whitworth solely owns WWI, (Roland TAC ¶ 178; Lomax TAC ¶ 277), and created WWI to enrich herself and defraud WW's creditors, (Roland TAC ¶ 203; Lomax TAC ¶ 302). According to Plaintiffs, these actions did not benefit WW and solely benefited Ms. Whitworth. (Roland TAC ¶ 203; Lomax TAC ¶ 302.) These allegations form the basis for Plaintiffs' claims for fraudulent transfer against WW. (Roland TAC ¶¶ 286–300; Lomax TAC ¶¶ 391–405.)

11. Plaintiffs also allege that Ms. Whitworth, as the sole and dominant shareholder of WW, amended and continued a sole source arrangement with Associated Materials, LLC. (Roland TAC ¶ 183; Lomax TAC ¶ 282.) Plaintiffs further assert that Ms. Whitworth caused WW to maintain a secret level of pricing with selected franchisees. (Roland TAC ¶¶ 129–34, 217; Lomax TAC ¶¶ 220–26, 316.) Based on these allegations, Plaintiffs contend that WW breached its contract obligation to provide superior wholesale pricing for the products Plaintiffs purchased, sold, and installed as franchisees, (Roland TAC ¶¶ 247–49, 256; Lomax TAC ¶¶ 351–53, 360), or in the alternative, that WW has been unjustly enriched, (Roland TAC ¶ 281; Lomax TAC ¶¶ 385–86). Plaintiffs additionally allege that Ms. Whitworth continued the practice of unlawfully portraying WW as a licensor, rather than a franchisor, to avoid statutory disclosure requirements. (Roland TAC ¶ 217; Lomax ¶ 316.) The aforementioned conduct forms the basis for Plaintiffs' fraud, negligent misrepresentation, and unfair or deceptive trade practice claims against WW. (Roland TAC ¶¶ 262, 271, 278; Lomax TAC ¶¶ 366, 375, 381.)

12. Plaintiffs also allege that from March 2010 to February 2011, while Ms. Whitworth or the Revocable Trust was WW's sole and dominant shareholder, WW had no functioning board. (Roland TAC ¶ 206; Lomax TAC ¶ 305.) Even after WW formed a board of directors in February 2011, Plaintiffs allege that the board's actions continued to reflect decisions that advanced Ms. Whitworth's personal interests over the interests of WW. (Roland TAC ¶¶ 209–10; Lomax ¶¶ 308–09.) In particular, Plaintiffs allege that WW did not collect payments due and owing on loans in favor of

the Whitworth family, (Roland TAC ¶ 192; Lomax TAC ¶ 291); Ms. Whitworth continued to draw millions of dollars of WW funds for personal expenses in 2013 and 2014, (Roland TAC ¶ 193; Lomax TAC ¶ 292); and WW continued to pay other personal expenses of Ms. Whitworth, including litigation expenses, dispute settlements, a motor coach, improvements to Ms. Whitworth's residence and vacation home, school activities of Ms. Whitworth's children, and veterinary expenses. (Roland TAC ¶¶ 194–95, 211; Lomax TAC ¶¶ 293–94, 310).

III.

PROCEDURAL BACKGROUND

13.    Plaintiffs initiated this action on January 2, 2015. The Roland Plaintiffs subsequently amended their complaint on February 16, 2015 as a matter of right. The Lomax Plaintiffs also amended their complaint as a matter of right on April 13, 2015. Plaintiffs later amended their complaints a second time, on March 22, 2016, after obtaining leave of Court. Plaintiffs moved the Court for leave to amend their complaints a third time on August 12, 2016. The Court granted Plaintiffs' motion over WW and WWI's (collectively, the "Window World Defendants") objections on January 5, 2017, and Plaintiffs filed their Third Amended Complaints (the "TACs," each a "TAC") on January 11, 2017.

14.    The Window World Defendants answered the Roland Action TAC on February 13, 2017 and the Lomax Action TAC on February 14, 2017.

15.    Ms. Whitworth moved to dismiss each TAC on March 16, 2017.

16. On May 23, 2017, Plaintiffs filed the Objections, contending that the Court should not consider certain documents attached to Ms. Whitworth's briefs supporting the Motions as documents outside the TACs. No responses to the Objections were filed.

17. The Court held a hearing on the Motions on May 24, 2017, at which all parties were represented by counsel.

18. The Motions and the Objections are now ripe for resolution.

IV.

PLAINTIFFS' OBJECTIONS

19. Plaintiffs in each case filed an objection to the Court's consideration of the October 24, 2011 Letter attached as Exhibit A to Ms. Whitworth's Brief in Support of her Motion to Dismiss and the hearing and deposition transcripts attached as Exhibits A, B, C, and D to her Reply Brief (the "Contested Exhibits").[1] (Notice Obj. Materials Outside Pleadings 1–2, hereafter "Obj.".) Ms. Whitworth has not filed a response to the Objections. As such, Plaintiffs' Objections are considered and decided as uncontested. BCR 7.6.

20. When considering a Rule 12(b)(6) motion to dismiss, "a court properly may consider only evidence contained in or asserted in the pleadings." *Jacobs v. Royal Ins. Co. of Am.*, 128 N.C. App. 528, 530, 495 S.E.2d 185, 187 (1998). However,

---

[1] Plaintiffs did not object to the Court's consideration of the Tolling Agreement and conceded at the hearing that it may be considered by the Court because the TACs specifically refer to and depend on the Tolling Agreement. *See Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009); *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). Nonetheless, as explained *infra*, the Court finds it unnecessary to consider the Tolling Agreement in deciding the Motions.

where the pleading specifically refers to and depends on certain documents, the Court may consider those documents without converting the motion into one for summary judgment under Rule 56 even if presented by the defendant. *See, e.g.*, *Schlieper*, 195 N.C. App. at 261, 672 S.E.2d at 551; *Oberlin Capital, L.P.*, 147 N.C. App. at 60, 554 S.E.2d at 847 (holding that consultation of documents is acceptable when it "does not create justifiable surprise in the nonmoving party," including "documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers").

21. At the same time, the Court may not consider materials that are extraneous to the pleading; otherwise, a Rule 12(b)(6) motion will be converted into a Rule 56 motion and subject to its standards of consideration and review. *See, e.g.*, *Fowler v. Williamson*, 39 N.C. App. 715, 717, 251 S.E.2d 889, 890−91 (1979) ("Where extraneous matter is received and considered on a Rule 12(b)(6) motion to dismiss, the motion should then be treated as a motion for summary judgment and disposed of in the manner and on the conditions stated in . . . Rule 56."). *But see Schlieper*, 195 N.C. App. at 261, 672 S.E.2d at 551 (2009) ("When documents are attached to and incorporated into a complaint, they become part of the complaint and may be considered in connection with a Rule 12(b)(6) motion without converting it into a motion for summary judgment.").

22. Ms. Whitworth has not contested Plaintiffs' assertion that the Contested Exhibits are not documents to which either TAC specifically refers or depends. Accordingly, Plaintiffs' Objections are sustained. The Court disregards and does not consider the Contested Exhibits for purposes of the Motions.

V.

MS. WHITWORTH'S MOTIONS TO DISMISS

23.    Ms. Whitworth moves to dismiss "[p]ursuant to Rule 12 of the North Carolina Rules of Civil Procedure," on the grounds that "the corporate veil of [WW] may not be pierced to reach [Ms. Whitworth], the statute of limitations bars [P]laintiffs' claims, the statute of repose bars [P]laintiffs' claims, . . . [P]laintiffs have failed to join necessary parties[,]" and Plaintiffs' failure to allege an in-state injury bars its claim under N.C. Gen. Stat. § 75-1.1.  (Whitworth's Mots. Dismiss 1; Whitworth's Br. Supp. Mot. Dismiss Roland TAC 28–29; Whitworth's Br. Supp. Mot. Dismiss Lomax TAC 29.)  Ms. Whitworth, therefore, seeks dismissal under Rule 12(b)(6) for failure to state a claim and Rule 12(b)(7) for failure to join a necessary party.  *See* N.C. R. Civ. P. 12(g).  (Whitworth's Mots. Dismiss 1.)

VI.

RULE 12(b)(6) MOTION TO DISMISS

A.  Legal Analysis.

24.    In ruling on a Rule 12(b)(6) motion to dismiss, the Court considers "whether the pleadings, when taken as true, are legally sufficient to satisfy the elements of at least some legally recognized claim." *Arroyo v. Scottie's Prof'l Window Cleaning, Inc.*, 120 N.C. App. 154, 158, 461 S.E.2d 13, 16 (1995).  The Court construes the pleading liberally and generally accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).  Furthermore, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff

is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

25.     Dismissal pursuant to a Rule 12(b)(6) motion is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).

B. Plaintiffs' Piercing the Corporate Veil Remedy

26.     The Supreme Court of North Carolina has recognized that "the whole area of limited liability, and conversely of piercing the corporate veil, is among the most confusing in corporate law." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 439, 666 S.E.2d 107, 113 (2008) (quoting Frank H. Easterbrook & Daniel R. Fischel, *Limited Liability and the Corporation*, 52 U. Chi. L. Rev. 89, 89 (1985)). Piercing the corporate veil creates an exception to the rule "that in the ordinary course of business, a corporation is treated as distinct from its shareholders." *Green v. Freeman*, 367 N.C. 136, 144–45, 749 S.E.2d 262, 270 (2013) (quoting *Ridgeway Brands*, 362 N.C. at 438, 666 S.E.2d at 112). Instead, veil piercing "allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other company or individual that controls and dominates a corporation." *Id.* at 145, 749 S.E.2d at 270.

27. Veil piercing is an equitable remedy which "requires a peculiarly individualized and delicate balancing of competing equities." *Ridgeway Brands*, 362 N.C. at 440, 666 S.E.2d at 113. "Disregarding the corporate form is not to be done lightly." *Green*, 367 N.C. at 145, 749 S.E.2d at 270 (citing *Ridgeway Brands*, 362 at 439, 666 S.E.2d at 112–13). However, doing so is appropriate "when applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim." *Ridgeway Brands*, 362 N.C. at 439, 666 S.E.2d at 112–13 (quoting *Bd. of Transp. v. Martin*, 296 N.C. 20, 26–27, 249 S.E.2d 390, 395 (1978)); *see also White v. Collins Bldg., Inc.*, 209 N.C. App. 48, 52, 704 S.E.2d 307, 310 (2011) (permitting veil piercing "whenever necessary to prevent fraud or to achieve equity"); *Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 37, 560 S.E.2d 817, 829 (2002) (permitting veil piercing "only in an extreme case where necessary to serve the ends of justice").

28. In considering whether a veil piercing remedy should be permitted, the factfinder must first determine whether the corporate veil should be pierced. *Green*, 367 N.C. at 145, 749 S.E.2d at 270. "Evidence upon which [courts of this State] have relied to justify piercing the corporate veil includes inadequate capitalization, noncompliance with corporate formalities, lack of a separate corporate identity, excessive fragmentation, siphoning of funds by the dominant shareholder, nonfunctioning officers and directors, and absence of corporate records." *Id*. (citing *Glenn v. Wagner*, 313 N.C. 450, 455–59, 329 S.E.2d 326, 330–32 (1985)). In assessing these factors, "[i]t is not the presence or absence of any particular factor that is

determinative," but "a combination of factors . . . taken together with an element of injustice or abuse of corporate privilege" that suggest that the corporate veil should be pierced. *Estate of Hurst ex rel. Cherry v. Moorehead I, LLC*, 228 N.C. App. 571, 578, 748 S.E.2d 568, 574 (2013) (quoting *Glenn v. Wagner*, 313 N.C. 450, 458, 329 S.E.2d 326, 332 (1985)).

29.     Next, the fact finder must determine whether "a noncorporate defendant may be held liable for [his/her] personal actions as an officer or director." *Green*, 367 N.C. at 145, 749 S.E.2d at 270. To do so, the plaintiff must prove: (1) that the defendant's "control of the corporation amount[ed] to 'complete domination' with respect to the transaction at issue;" (2) that the defendant "use[d] . . . this control to commit a wrong, or to violate a statutory or other duty in contravention of the other party's rights;" and (3) that "this wrong or breach of duty [was] the proximate cause of the injury to the other party." *Ridgeway Brands*, 362 N.C. at 441, 666 S.E.2d at 114 (citing *Glenn*, 313 N.C. at 454–55, 329 S.E.2d at 330). Therefore, evidence of domination and control alone is insufficient; there must also be a wrong—"an underlying legal claim [against the dominated entity] to which liability may attach[,]" *Green*, 367 N.C. at 146, 749 S.E.2d at 271. *See also Glenn*, 313 N.C. at 458, 329 S.E.2d at 333 (requiring "an element of injustice or abuse of corporate privilege" to permit veil piercing).

30.     Ms. Whitworth first argues that Plaintiffs' allegations demonstrate that she lacked "complete domination and control" of WW. Ms. Whitworth asserts that the allegations and exhibits showing (i) the reliance of Plaintiffs on the statements of

other officers of WW, (Roland TAC ¶¶ 123–33, 267; Lomax TAC ¶¶ 129–32), (ii) the signature of WW's president on documents effectuating transactions that are the subject of this suit, (Roland TAC Exs. F, K; Lomax TAC Exs. F, K), (iii) the re-instatement of a board of directors, (Roland TAC ¶ 209; Lomax TAC ¶ 308), and (iv) board minutes suggesting collective decision making, (Roland TAC Exs. R, O; Lomax TAC Exs. R, O), "conclusively establish that [Ms. Whitworth] did not 'completely dominate' [WW,]" (Whitworth's Br. Supp. Mot. Dismiss Roland TAC 8–16; Whitworth's Br. Supp. Mot. Dismiss Lomax TAC 5–17.) Although the Court agrees that these allegations and exhibits are likely relevant in determining whether Ms. Whitworth actually exercised "complete domination and control," the proper inquiry for this Court on a motion to dismiss under Rule 12(b)(6) is whether these facts, when viewed in the light most favorable to Plaintiffs, "necessarily defeat[]" Plaintiffs' veil piercing remedy. *Pinney v. State Farm Mut. Ins. Co.*, 146 N.C. App. 248, 253, 552 S.E.2d 186, 190 (2001).

31. Here, Plaintiffs have asserted that Ms. Whitworth has had complete domination and control of WW since March 22, 2010 and alleged facts that, viewed in the light most favorable to Plaintiffs, support this contention. (Roland TAC ¶¶ 176, 180; Lomax TAC ¶¶ 275, 279.) As alleged, Ms. Whitworth was the CEO and sole shareholder of WW when, at a time WW had no functioning board of directors, she transferred all shares of WW to her Revocable Trust and then assigned all of WW's intellectual property to WWI in order to "deplete[] the assets of WW in an effort to frustrate the ability of WW's creditors, including Plaintiffs, to recover on legal claims

asserted against WW." (Roland TAC ¶¶ 205–06, 216; Lomax TAC ¶¶ 304–05, 315; *see also* Roland TAC ¶¶ 176, 178, 199; Lomax TAC ¶¶ 275, 277, 298.)

32. As alleged by Plaintiffs, Ms. Whitworth also caused WW to continue avoiding required franchisor statutory disclosure requirements, to continue misrepresenting to Plaintiffs WW's available pricing, and to renew the sole source agreement which Plaintiffs allege boosted prices at their expense and to Ms. Whitworth's personal benefit. (Roland TAC ¶ 217; Lomax TAC ¶ 316.) Additionally, Plaintiffs assert that Ms. Whitworth's alleged control has resulted in the reinstated board of directors continuing to act in her best interests, rather than in the best interests of WW, (Roland TAC ¶ 209; Lomax TAC ¶ 308), by, among other things, allowing WW to pay for her personal expenses, (Roland TAC ¶ 210, Lomax TAC ¶ 309 (taxes)) (Roland TAC ¶ 195; Lomax TAC ¶ 294 (litigation expenses)) (Roland TAC ¶ 211; Lomax TAC ¶ 310 (personal taxes and purchase of personal property)).

33. Viewing the allegations of the TACs in the light most favorable to Plaintiffs, the Court concludes that the TACs allege sufficient facts showing that Ms. Whitworth had complete domination and control of WW with respect to the transactions at issue, and that Ms. Whitworth's allegedly wrongful conduct through the exercise of that domination and control was a proximate cause of harm to Plaintiffs. *See, e.g.*, *Ridgeway Brands*, 362 N.C. at 442–43, 666 S.E.2d at 115 (reversing trial court's dismissal of veil piercing claim, given allegations that defendants "deliberately and purposefully chose to line their personal pockets"); *Fischer Inv. Capital, Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 657, 689 S.E.2d

143, 152 (2009) (reversing trial court's dismissal of veil piercing claim "since its pleading asserts facts that, if proven to be true, would establish all the elements of the 'instrumentality rule'"); *cf. B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 9–10, 149 S.E.2d 570, 576 (1966) (holding that plaintiffs failed to allege facts showing complete domination and control); *Blue Ridge Pediatric & Adolescent Med., Inc. v. First Colony Healthcare, LLC*, 2012 NCBC LEXIS 52, at *15–16 (N.C. Super. Ct. Oct. 3, 2012) (holding plaintiffs "fail[ed] to point to specific acts of control or domination by the Individual Defendants over [Corporate] Subsidiaries"). *See also generally Embree Constr. Grp., Inc. v. Rafcor, Inc.*, 330 N.C. 487, 500, 411 S.E.2d 916, 925 (1992) ("Under the notice theory of pleading, a statement of a claim is adequate if it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand its nature and basis and to file a responsive pleading.").

34.    Ms. Whitworth next argues that the veil piercing remedy cannot succeed against her because she currently is not a shareholder of WW. (Whitworth's Br. Supp. Mot. Dismiss Roland TAC 16–17; Whitworth's Br. Supp. Mot. Dismiss Lomax TAC 17–18.)  According to Plaintiffs, Ms. Whitworth was WW's sole shareholder from March 22, 2010 to June 21, 2010, (Roland TAC ¶¶ 176, 178; Lomax TAC ¶¶ 275, 277), but since June 21, 2010, the Revocable Trust, which is solely controlled by Ms. Whitworth, has been the sole shareholder of WW. (Roland TAC ¶ 178; Lomax TAC ¶ 277.)

35.     North Carolina appellate decisions, however, have not limited the availability of the veil piercing remedy to claims against shareholders.  To the contrary, the Supreme Court of North Carolina has expressly recognized that veil piercing "provides an avenue to pursue legal claims against *corporate officers or directors* – who would otherwise be shielded by the corporate form" and that veil piercing "allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upo*n some other company or individual* that controls and dominates a corporation." *Green*, 367 N.C. at 145–46, 749 S.E.2d at 270–71 (emphasis added).

36.     Nevertheless, where courts have pierced the corporate veil, control or domination has usually been accompanied by direct, or, as here, indirect, ownership. *E.g., Ridgeway Brands*, 362 N.C. at 440–41, 666 S.E.2d at 113–14 ("[T]he instrumentality rule allows for the corporate form to be disregarded if 'the corporation is so operated that it is a mere instrumentality or *alter ego* of the *sole or dominant shareholder*[.]'"); *Statesville Stained Glass v. T.E. Lane Constr. & Supply*, 110 N.C. App. 592, 596, 430 S.E.2d 437, 440 (1993) ("When a 'corporation is so operated that it is a mere instrumentality or alter ego of the *sole or dominant shareholder* and a shield for his [wrongful] activities . . . the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same[.]'") (emphasis added) (quoting *Henderson v. Sec. Mort. & Fin. Co.*, 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968)).

37.     A mandatory ownership requirement, however, which the Supreme Court has declined to impose, could create an avenue for the cunning to avoid liability while maintaining "control . . . in respect to the transaction . . . [such] that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." *Green*, 367 N.C. at 145–46, 749 S.E.2d at 270 (quoting *Glenn*, 313 N.C. at 455, 329 S.E.2d at 330).  *See also Allred v. Exceptional Landscapes, Inc.*, 227 N.C. App. 229, 236, 743 S.E.2d 48, 54 (2013) (reversing factfinder where findings of fact insufficient to support conclusion that defendant had "complete domination of policy, finances, and business practices . . . [or] that [defendant] exercised such control over [the corporation] that the corporate entity had no separate existence").

38.     The relevant inquiry therefore is not whether Plaintiffs have pleaded that Ms. Whitworth was a shareholder at the time of the transactions at issue but whether Plaintiffs have alleged facts showing that Ms. Whitworth held and exercised domination and control with respect to the transactions at issue.  Because the Court has already concluded that Plaintiffs have sufficiently pleaded facts showing that Ms. Whitworth had the requisite domination and control over WW, and because Plaintiffs have alleged facts showing that since March 22, 2010, Ms. Whitworth has held and exercised that domination and control over WW, individually or through the Revocable Trust, concerning the transactions at issue, the Court concludes that Ms. Whitworth's shareholder-based argument necessarily fails.  *See* N.C. Gen. Stat. § 36C-6-603(a) ("While a trust is revocable, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor. If a trustee

is a settlor, the trustee's actions are presumed to be taken at the direction of the settlor.").

C. Ms. Whitworth's Limitations and Repose Defenses.

39. Ms. Whitworth also argues that Plaintiffs' claims are barred by the applicable statutes of limitations because she was not a party to the Tolling Agreement entered into by Plaintiffs and WW and because the applicable statutes of limitations expired prior to the initiation of this action. (Whitworth's Br. Supp. Mot. Dismiss Roland TAC 19–28; Whitworth's Br. Supp. Mot. Dismiss Roland TAC 20–28.)

40. "A motion to dismiss under Rule 12(b)(6) is an appropriate method of determining whether the statutes of limitation bar plaintiff's claims if the bar is disclosed in the complaint." *See Carlisle v. Keith*, 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005) (citing *Horton v. Carolina Medicorp*, 344 N.C. 133, 136, 472 S.E.2d 778, 780 (1996)). Whether a statute of limitations defense may be determined at the 12(b)(6) stage "depends on whether the facts necessary to adjudicate the defense are demonstrated by the complaint itself or whether additional evidence must be considered. *BDM Invs. v. Lenhil, Inc.*, 2012 NCBC LEXIS 7, at *30 (N.C. Super. Ct. Jan 18, 2012).

41. The Supreme Court of North Carolina has held that "when the corporate defendant is the mere instrumentality, or alter ego, of the individual defendant, the individual is not considered a new party" for purposes of the statute of limitations. *Ridgeway Brands,* 362 N.C. at 432, 666 S.E.2d 109. The court reasoned that because the corporate defendant and the individual defendant are "one and the same" if they

are proven to be alter egos, the trial court could not dismiss the claims against the individual defendant on statute of limitations grounds when the statute did not bar the claims against the corporate defendant and the plaintiff had made the necessary showing to sustain an alter ego claim at the pleading stage. *Id*. at 441–43, 668 S.E.2d at 114–15 (quoting *Henderson*, 273 N.C. at 260, 160 S.E.2d at 44).

42.    Applying that logic here, Plaintiffs' claims against Ms. Whitworth are not barred by the statute of limitations if, based on the allegations of the TACs, the claims against her alleged alter ego, WW, are timely.  This conclusion reflects not only that the corporate defendant and individual defendant are one and the same under the purported alter ego theory but also that alter ego liability is not a claim but a remedy that requires "an underlying legal claim [against the dominated entity] to which liability may attach." *Green*, 367 N.C. at 146, 749 S.E.2d at 271 (citing *Glenn*, 313 N.C. at 455, 329 S.E.2d at 330).

43.    Turning then to the allegations concerning the timeliness of Plaintiffs' claims against WW,[2] the Court first addresses Plaintiffs' contention that its claims are timely under the continuing wrong doctrine.  Under that doctrine, "a statute of limitations does not begin to run until the violative act ceases." *Williams v. Blue*

---

[2] As an initial matter, the Court rejects Plaintiffs' contention that the filing of WW's answer precludes Ms. Whitworth's assertion of limitations and repose defenses.  (Pls.' Resp. Br. Opp'n Mot. Dismiss Roland TAC 14; Pls.' Resp. Br. Opp'n Mot. Dismiss Lomax TAC 14.)  Even if the Court were to assume, as Plaintiffs appear to suggest, that Ms. Whitworth's affirmative defenses are necessarily limited under North Carolina law to those pleaded by WW, WW asserted a statute of limitations defense in its answer—thus preserving Ms. Whitworth's ability to assert this defense even under Plaintiffs' statement of the law. *See, e.g.*, *Gragg v. W. M. Harris & Son*, 54 N.C. App. 607, 609, 284 S.E.2d 183, 185 (1981) ("[T]he statute of limitations is a technical defense, and must be timely pleaded or it is deemed waived.").

*Cross Blue Shield of N.C.*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003). Based on the Court's careful review of the TACs, the Court concludes that Plaintiffs have alleged facts that, when taken as true, show that WW engaged in the allegedly wrongful conduct that gave rise to each claim up to the time the original complaints were filed in these actions on January 2, 2015. (Roland TAC ¶¶ 161, 258; Lomax TAC ¶¶ 260, 354.) Because the Court cannot conclude that Defendants' defenses under the applicable statute of limitations, borrowing statute, and statute of repose must prevail as a matter of law on the face of the TACs, the Court must deny Ms. Whitworth's Motions to Dismiss to the extent it is based on these defenses. *Carlisle*, 169 N.C. App. at 681, 614 S.E.2d at 547.[3]

D. Plaintiffs' Section 75-1.1 Claims.

44. Finally, Ms. Whitworth argues that Plaintiffs' claims for unfair or deceptive trade practices under N.C. Gen. Stat. § 75-1.1 fail because Plaintiffs are not located in and did not suffer injury in North Carolina. (Whitworth's Br. Supp. Mot. Dismiss Roland TAC 28–29; Whitworth's Br. Supp. Mot. Dismiss Lomax TAC 29.) North Carolina courts follow the choice of law rule *lex loci*, the law of the situs of the claim, to determine the applicable law for matters affecting substantial rights of the parties. *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853–54 (1988)

---

[3] Because the Court does not rely upon the Tolling Agreement to resolve Ms. Whitworth's Motion, the Court declines to address Ms. Whitworth's argument that Plaintiffs' material breach of that Agreement made it void and unenforceable, (Whitworth's Br. Supp. Mot. Dismiss Roland TAC 26–27; Whitworth's Br. Supp. Mot. Dismiss Lomax TAC 27), or that the equitable remedy of veil piercing cannot alter the Agreement's terms under *Cherry v. State Farm Mut. Auto. Ins. Co.*, 162 N.C. App 535, 535–36, 590 S.E.2d 925, 927 (2004), (Whitworth's Reply Br. Supp. Mot. Dismiss Roland TAC 12).

(citing *Charnock v. Taylor*, 223 N.C. 360, 361, 26 S.E.2d 911, 913 (1943)). "For actions sounding in tort, the state where the injury occurred is considered the situs of the claim." *Id.* at 335, 368 S.E.2d at 854; *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722 (2010).

45.     Our appellate courts, however, have not clearly determined whether the *lex loci* rule or the most significant relationship test is the appropriate choice of law rule to apply to claims under section 75-1.1. *See, e.g., Associated Packaging, Inc. v. Jackson Paper Mfg. Co.*, 2012 NCBC LEXIS 13, at *13–14 (N.C. Super. Ct. Mar. 1, 2012) (citing *Stetser v. TAP Pharm. Prods. Inc.*, 165 N.C. App. 1, 15, 598 S.E.2d 570, 581 (2004)); *compare Andrew Jackson Sales v. Bi-Lo Stores*, 68 N.C. App. 222, 225, 314 S.E.2d 797, 799 (1984) (suggesting adoption of "significant relationship" test), *with United Va. Bank v. Air-Lift Assocs*, 79 N.C. App. 315, 321, 339 S.E.2d 90, 93 (1986) (suggesting adoption of *lex loci* rule).

46.     Nonetheless, this Court recently concluded that the Supreme Court of North Carolina will likely apply the *lexi loci* rule to section 75-1.1 claims based on its rejection of the modern trend towards the "most significant relationship" test in the court's *Boudreau* decision and has applied the *lexi loci* rule to such claims. *See Soma Tech, Inc. v. Dalamagas*, 2017 NCBC LEXIS 43, at *19 n.5 (N.C. Super. Ct. May 11, 2017); *see also Associated Packaging, Inc.*, 2012 NCBC LEXIS 13, at *13–18. Therefore, this Court will apply the *lex loci* rule to the section 75-1.1 claims asserted in the Roland and Lomax Actions.

47. Under *lex loci delicti*, "[t]he plaintiff's injury is considered to be sustained in the state 'where the last act occurred giving rise to [the] injury.'" *Harco Nat'l Ins. Co.*, 206 N.C. App. at 694, 698 S.E.2d at 724 (alteration in original) (quoting *United Va. Bank*, 79 N.C. App. at 321, 339 S.E.2d at 94). In *Harco*, the court declined to recognize a bright line rule that a plaintiff suffers its injury at its principal place of business. *Id.* at 697, 698 S.E.2d at 725–26. Therefore, North Carolina courts must analyze and determine where a plaintiff in fact sustained its alleged injury to determine choice of law under the *lex loci* rule. *Id.*

48. Here, Ms. Whitworth contends that North Carolina law does not apply because Plaintiffs "are not located in North Carolina, and did not suffer injury in, North Carolina." (Whitworth's Br. Supp. Mot. Dismiss Roland TAC 28–29; Whitworth's Br. Supp. Mot. Dismiss Lomax TAC 29.) In opposition, Plaintiffs argue that they were injured in North Carolina when WW "received kickbacks and/or failed to disclose the amount and nature of kickbacks, along with other information that they were required to disclose to Plaintiffs as a matter of law." (Pls.' Resp. Br. Opp'n Mot. Dismiss Roland TAC 23; Pls.' Resp. Br. Opp'n Mot. Dismiss Lomax TAC 23.) In the alternative, Plaintiffs argue that it is premature for the Court to determine where Plaintiffs' claims in fact arose before the factual record has been fully developed in these cases. (Pls.' Resp. Br. Opp. Mot. Dismiss Roland TAC 23; Pls.' Resp. Br. Opp. Mot. Dismiss Lomax TAC 23.)

49. Based on its review of the TACs in the light most favorable to Plaintiffs, the Court cannot conclude that Plaintiffs were not injured in North Carolina for

purposes of the *lex loci delicti* rule as a matter of law. Ms. Whitworth's bare assertion that Plaintiffs "are not located in, and did not suffer injury in, North Carolina" at this early stage of the proceedings is insufficient to sustain Ms. Whitworth's burden in light of the allegations of Plaintiffs' purported injuries in the TACs. (Whitworth's Br. Supp. Mot. Dismiss Roland TAC 28–29; Whitworth's Br. Supp. Mot. Dismiss Lomax TAC 29.) *See generally Neier v. State*, 151 N.C. App. 228, 233, 565 S.E.2d 229, 232 (2002) (holding that neither party has an evidentiary burden on a Rule 12(b)(6) motion and the movant's burden of demonstrating that the action should be dismissed was "not shifted . . . by inviting the nonmovant to submit case law in support of the legal sufficiency of his claim"). Accordingly, the Court concludes that Ms. Whitworth's Motions to Dismiss Plaintiffs' section 75-1.1 claims under Rule 12(b)(6) should be denied.

VII.

RULE 12(b)(7) MOTIONS TO DISMISS

50. Ms. Whitworth argues that the Revocable Trust, the transferee and holder of all of Ms. Whitworth's WW stock; Leon and Marie Whitworth, WW's former shareholders; and Blair Ingle, WW's former President, are necessary parties to this litigation. (Whitworth's Br. Supp. Mot. Dismiss Roland TAC 17–18; Whitworth's Br. Supp. Mot. Dismiss Lomax TAC 18–19; Whitworth's Reply Br. Supp. Mot. Dismiss Roland TAC 10–11; Whitworth's Reply Br. Supp. Mot. Dismiss Lomax TAC 10–11.)

51. Under Rule 12(b)(7), a claim must be dismissed if a necessary party cannot be joined. N.C. R. Civ. P. 12(b)(7). Rule 19(a) requires "those who are united

in interest [to] be joined as plaintiffs or defendants[.]" N.C. R. Civ. P. 19(a). A party is united in interest, i.e., is a "necessary party," if it is "so vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence[.]" *Strickland v. Hughes*, 273 N.C. 481, 485, 160 S.E.2d 313, 316 (1968) (citations omitted). Stated differently, "[n]ecessary parties are those persons who have rights which must be ascertained and settled before the rights of the parties to the suit can be determined." *Wall v. Sneed*, 13 N.C. App. 719, 724, 187 S.E.2d 454, 457 (1972) (quoting *Assurance Society v. Basnight*, 234 N.C. 347, 67 S.E. 2d 390, 395 (1951)).

52. Here, Plaintiffs only seek to hold Ms. Whitworth individually liable for the acts of her alleged alter ego, WW, to permit recovery against Ms. Whitworth's individual assets. In North Carolina, revocable trusts are by their nature subject to the control and whim of the settlor, who can revoke the trust at any time, *see generally* N.C. Gen. Stat. § 36C-6-603(a), and, as a result, are "subject to the claims of the settlor's creditors[,]" N.C. Gen. Stat. § 36C-5-505(a)(1). Consequently, the Revocable Trust is not a necessary party in this litigation because the Court concludes that a valid judgment can be rendered in this action between Plaintiffs and Ms. Whitworth that completely and finally determines the controversy between them without the Revocable Trust's participation as a party.[4]

---

[4] For clarity, however, the Court directs that the case caption be amended hereafter to reflect that Ms. Whitworth has been sued by Plaintiffs both in her individual capacity and as Trustee of the Revocable Trust.

53. Ms. Whitworth's contention that Leon and Marie Whitworth and Blair Ingle are necessary parties as former shareholders and officers also fails. Piercing the corporate veil is not a separate theory of liability but merely a remedy for recovery. *See Green*, 367 N.C. at 146, 749 S.E.2d at 271. A valid judgment can be rendered against WW in this litigation, and that judgment applied to Ms. Whitworth if the corporate veil is pierced, without the presence of former shareholders and officers. It is axiomatic that a plaintiff "has the right to bring his suit in the manner and in the form he may elect[,]" *Marshall Motor Co. v. Universal Credit Co.*, 219 N.C. 199, 201, 13 S.E.2d 230, 231 (1941), and the fact that Plaintiffs might potentially have a veil piercing remedy against others in the circumstances here does not require that those persons be joined as necessary parties under Rule 19.

54. Therefore, the Court concludes that neither the Revocable Trust nor Leon and Marie Whitworth nor Blair Ingle are necessary parties to these actions and denies Ms. Whitworth's Motions to Dismiss for failure to join a necessary party under Rule 12(b)(7).

## VIII.

## CONCLUSION

55. **WHEREFORE**, the Court, for the reasons stated herein, hereby (i) **SUSTAINS** Plaintiffs' Objections to Materials Outside the Pleadings, and (ii) **DENIES** Ms. Whitworth's Motions to Dismiss Plaintiffs' Third Amended Complaint.

**SO ORDERED**, this the 12th day of July, 2017.[5]

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
  for Complex Business Cases

---

[5] Because certain materials in connection with this Motion were filed under seal, the Court, out of an abundance of caution, originally filed this Order and Opinion under seal on July 7, 2017 to permit the parties to identify any redactions any party contended were necessary. After an opportunity for response, no party contends that redactions are necessary; thus, the Court refiles the Order and Opinion on the public docket without redactions.